UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEHACHAPI UNIFIED SCHOOL DISTRICT,<br><br>    Plaintiff,<br><br>    v.<br><br>K.M., a minor, by and through her parents and guardians ad litem, Dean Markham and Brenda Markham,<br><br>    Defendants. | No. 1:16-cv-01942-DAD-JLT<br><br>ORDER AFFIRMING ALJ DECISION ON APPEAL<br><br>(Doc. Nos. 30, 25) |

    Plaintiff Tehachapi Unified School District ("plaintiff") filed the complaint in this action on December 29, 2016. (Doc. No. 1.) Plaintiff appeals the decision of an administrative law judge ("ALJ") following a due process hearing under the Individuals with Disabilities Education Act ("IDEA"), which was conducted on October 11-12, 2016. (*Id.* at 7.) Plaintiff asserts that the ALJ erred in several respects. Plaintiff also contends that defendant K.M. ("defendant") is not entitled to attorney's fees under the IDEA.

    Plaintiff's opening brief was filed on July 21, 2017. (Doc. No. 25.) Defendant filed an opposition brief, along with exhibits A-F, on August 18, 2017. (Doc. Nos. 26, 27.) Plaintiff filed a reply on September 8, 2017. (Doc. No. 28.) On October 10, 2017, plaintiff filed a motion to submit the matter on the briefs and to vacate the hearing date. (Doc. No. 30.) Defendant opposed

the motion on October 13, 2017. (Doc. No. 31.) Nonetheless, on November 14, 2017, the court heard oral argument on the merits with attorney Kyle Holmes appearing telephonically on behalf of plaintiff and attorney Andrea Marcus appearing telephonically on behalf of defendant. (Doc. No. 33.) Having considered the parties' briefs and oral arguments, and for the reasons that follow, the administrative decision is affirmed.

## **LEGAL STANDARD**

The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). "The IDEA is a comprehensive educational scheme that confers on students with disabilities a substantive right to public education." *Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1166 (9th Cir. 2007). The IDEA requires each educational agency to have an individualized education plan ("IEP") in place for each child with a disability at the beginning of each school year. 20 U.S.C. § 1414(d)(2)(A). The IEP must consider the strengths of the child, parental concerns, evaluations of the child, and the academic, functional, and developmental needs of the child. *Id.* at § 1414(d)(3)(A). The IEP team[1] is also instructed to "consider the use of positive behavioral interventions and supports" if the child exhibits behavior that "impedes the child's learning." *Id.* at § 1414(d)(3)(B). The school district must ensure that the IEP team reviews the child's IEP at least once a year and revises it as necessary in the interim. *Id.* at § 1414(d)(4)(A). "The IEP is the basic mechanism through which th[e] goal [of providing a FAPE] is achieved for each disabled child." *Pitchford ex rel. M. v. Salem-Keizer Sch. Dist. No. 24J*, 155 F. Supp. 2d 1213, 1233–34 (D. Or. 2001) (quoting *Murray v. Montrose Cty. Sch. Dist. RE-1J*, 51 F.3d 921, 925 (10th Cir. 1995)); *see also Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J*, 502 F.3d 811, 818 (9th Cir. 2007).

/////

---

[1] The IEP team includes the parents of a child with a disability, at least one regular education teacher and one special education teacher, and a representative of the school district, as well as optional experts to assist in the decision-making. 20 U.S.C. § 1414(d)(B).

2

The IDEA provides "procedural recourse" for claims that an IEP determination was made in error. *Kutasi*, 494 F.3d at 1166 (quoting *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525 (2007)). Any party may present a complaint regarding alleged inadequacies in the provision of a FAPE occurring within the prior two years. 20 U.S.C. § 1415(b)(6). If a complaint is not resolved to the parents' satisfaction within thirty days of receipt, a "due process hearing" may be sought by either the parents or the educational agency. *Id.* at § 1415(f)(1)(A), (B)(ii). The hearing officer or ALJ who conducts the hearing is tasked with rendering a decision as to whether the child received a FAPE. *Id.* at § 1415(f)(3)(A), (E). If a party is aggrieved by the decision of the ALJ, they may bring a civil action in either state or federal court. *Id.* at § 1415(i)(2)(A).

In a civil action brought under the IDEA, the district court must receive the records of the administrative proceeding, and "grant such relief" as it deems appropriate, based on a preponderance of the evidence. *Id.* at § 1415(i)(2)(C); *see also Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 890–92 (9th Cir. 1995) (noting that this unusual judicial review provision "tells the court to hear additional evidence outside the administrative record and then base its decision on the preponderance of the evidence") (internal quotations omitted). The court may also award attorneys' fees to the prevailing party. *Id.* at § 1415(i)(3). Whichever party appeals the decision of the ALJ to the district court bears the burden of demonstrating that the ALJ's decision was in error. *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007); *James M. ex rel. Sherry M. v. Hawaii*, 803 F. Supp. 2d 1150, 1158 (D. Haw. 2011); *J.S. v. Shoreline Sch. Dist.*, 220 F. Supp. 2d 1175, 1184 (W.D. Wash. 2002).

As is common in review of administrative agency determinations, the ALJ's decision in an IDEA due process hearing receives a measure of deference from the courts. However, "[u]nder the IDEA, federal courts accord considerably less deference to state administrative proceedings than they do in most instances of 'judicial review of . . . agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review.'" *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1053 (9th Cir. 2012) (quoting *E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Admin. Hearings*, 652 F.3d 999, 1005 (9th Cir. 2011); *see also J.W. ex rel. J.E.W. v. Fresno Unified School Dist.*, 626 F.3d 431,

438 (9th Cir. 2010); *JG v. Douglas Cty. Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008). While "[c]omplete *de novo* review . . . is inappropriate," *Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001), courts are to "give due weight to the state administrative proceedings,"[2] and, "at a minimum, must consider the findings carefully." *R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007) (quotations and internal citations omitted); *see also Anchorage Sch. Dist.*, 689 F.3d at 1053. Particularly, the findings of the ALJ should be given additional deference when "they are thorough and careful." *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994); *see also R.B. ex rel. F.B.*, 496 F.3d at 937; *A.M ex rel. Marshall v. Monrovia Unified School Dist.*, 627 F.3d 773, 778 (9th Cir. 2010). *But see M.C. by and through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1194 (9th Cir. 2017) (indicating the court may, but is not required, to "accord some deference to the ALJ's factual findings, but only where they are 'thorough and careful'") (quoting *Union Sch. Dist.*, 15 F.3d at 1524).[3]

**BACKGROUND**

**A.     The ALJ's Factual Findings**

This background is summarized from the ALJ's factual findings, which are largely undisputed.[4] (*See* Doc. No. 1 at 8–20.) Insofar as any specific fact is not disputed, the ALJ's

/////

---

[2] In California, these administrative or due process hearings "are conducted by the Office of Administrative Hearings, a state agency independent of the Department of Education." *Fairfield Suisun Unified Sch. Dist. v. Cal. Dep't of Educ.*, 780 F.3d 968, 969 (9th Cir. 2015); *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1085 n.3 (9th Cir. 2012).

[3] The Ninth Circuit has also noted that federal courts "should not substitute their own notions of sound educational policy for those of the school authorities which they review," and "must grant deference to the sound judgment of the various state educational agencies." *Wilson v. Marana Unified Sch. Dist. No. 6 of Pima Cty.*, 735 F.2d 1178, 1183 (9th Cir. 1984); *see also Amanda J. ex rel. Annette J.*, 267 F.3d at 887–88; *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987) (noting that while deference is owed, "[h]ow *much* deference to give state educational agencies . . . is a matter for the discretion of the courts"). The undersigned takes this statement as reiterating that a discretionary amount of deference is owed to the decision of the ALJ—an officer of the state, *see* note 2, above—rather than to the plaintiff school district.

[4] Any relevant factual disputes are discussed in relation to specific issues on appeal below.

4

factual findings are adopted in recognition of the "due weight" to be given to those administrative proceedings. *R.B. ex rel. F.B.*, 496 F.3d at 937.

At the time of the administrative hearing, defendant was a nine-year-old girl eligible for special education under the categories of autism and speech or language impairment. (Doc. No. 1 at 8.) Defendant's autism adversely impacted her speech skills and slowed the development of her language abilities. (*Id.* at 9.) Defendant stopped talking for several years during which she only used manual signs and gestures to communicate. (*Id.*) She became verbal again in 2014 when she was seven years old. (*Id.*) In March and April of 2016, defendant's verbal abilities remained limited. (*Id.*) Defendant became frustrated and displayed aggressive behavior when she could not communicate her needs and wants. (*Id.* at 10.)

Defendant's March 17, 2014 IEP included two communication goals targeting her ability to understand oral directions and to demonstrate recognition of pictures by vocalizing with words or phrases. (*Id.* at 9.) The March 2014 IEP required plaintiff to provide defendant with specialized academic instruction in one of its special day classes. (*Id.*) To support defendant's communication goals, the IEP also required plaintiff to provide forty minutes per week of group speech and language services. (*Id.*)

Defendant's IEP team met again on December 18, 2014, but the meeting was continued to January 22, 2015 and concluded on February 3, 2015. (*Id.* at 10.) At that time, the team reviewed a November 2014 speech assessment of defendant conducted by Jennifer Faulk, a speech-language pathologist with the office of the Kern County Superintendent of Schools. (*Id.*) Ms. Faulk conducted a picture vocabulary test that determined that defendant, who was seven years and ten months old at the time, displayed the vocabulary skills of a student aged four years and ten months old. (*Id.*) In her report, Ms. Faulk also noted that, per the opinion of a speech and language therapist who worked directly with defendant, defendant worked best when she received individual attention in the speech room. (*Id.*) Based on Ms. Faulk's recommendations, plaintiff offered defendant 160 minutes per month of small group speech and language services, as well as an additional eighty minutes per month of individual speech services. (*Id.* at 11.) Defendant's parents did not consent to this offer. (*Id.*)

Defendant's IEP team next met on October 19, 2015 to review the results of multiple assessments, including an independent speech evaluation completed by speech-language pathologist Karen Schnee. (*Id.*) Ms. Schnee concluded that defendant required more intensive language intervention due to the severity of her language delay. (*Id.*) Ms. Schnee recommended seven additional goals to the four that Ms. Faulk had previously proposed. (*Id.* at 12.) Plaintiff proposed to incorporate all four goals suggested by Ms. Faulk, as well as four recommended by Ms. Schnee. (*Id.*) The IEP team agreed to reconvene and incorporate these changes on October 30, 2015. (*Id.*) However, at the October 30, 2015 meeting, the IEP team focused on transition plans for defendant pursuant to an Office of Administrative Hearings ("OAH") decision rendered in a separate matter. (*Id.*) Defendant invoked her right to stay put[5] on December 4, 2015. (*Id.*)

On December 7, 2015, Defendant's IEP team met for an annual review of her IEP. (*Id.*) Plaintiff proposed six communication goals derived from Ms. Schnee's report, other available data, and recommendations from defendant's speech therapist, Lyndi Cyr. (*Id.*) Given defendant's significant communication deficits, Ms. Cyr opined that defendant's language needs should take priority over her academics. (*Id.*) Pursuant to defendant's stay put request, plaintiff offered defendant placement in a special day class program at Cummings Valley Elementary School with an aide, continuing to offer 160 minutes of group speech and language sessions and eighty minutes of individual speech services per month. (*Id.*) Defendant's parents did not consent to this IEP offer, though defendant returned to school at Cummings Valley in January 2016 after not attending the first semester of her third-grade year due to a dispute between plaintiff and defendant's parents. (*Id.*)

Plaintiff held a further review of the December 2015 annual IEP team meeting beginning on March 3, 2016. (*Id.* at 13.) This meeting was continued to three additional dates – March 31, 2016, April 13, 2016, and April 19, 2016. (*Id.*) The purpose of these meetings was to review and update the IEP for defendant's current stay put placement at Cummings Valley. (*Id.*)

---

[5] The stay put doctrine states that "during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing . . ., unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement." 34 C.F.R. § 300.518.

6

The March 3, 2016 meeting was the first time the IEP team met since defendant's return to school in January 2016. (*Id.*) The meeting was attended by defendant's parent; defendant's attorneys; Jeanette Pool, a family friend; Candace Braker, defendant's home applied behavior analysis provider; Dennis Ferrell, administrator for plaintiff; Tracy Minjares, school principal; Joanna Hammer, school psychologist; Caroline Winchell and Diane Cole, speech pathologists; general and special education teachers; and plaintiff's attorney. (*Id.*) All administrators for plaintiff, except for its attorney, were new to defendant's IEP team. (*Id.*) Although team members were informed at that time that defendant had significant delays in all areas of communication and that her speech skills were limited, defendant's needs for speech and language services were not specifically addressed at this meeting. (*Id.*) In the drafted March 3, 2016 IEP, plaintiff offered defendant five communication goals that did not include Ms. Schnee's previous recommendations. (*Id.* at 14.)

Defendant's IEP team reconvened later that month, on March 31, 2016, and that meeting was attended by the same team members who attended the March 3, 2016 meeting, except for defendant's counsel, plaintiff's counsel, and the general education teacher. (*Id.*) A different general education teacher attended, as did defendant's grandmother. (*Id.*) Mr. Ferrell informed the team that his goal was to review defendant's December 2015 IEP and make changes so that it reflected her program at Cummings Valley. (*Id.*) The December 2015 IEP offered 160 monthly minutes of group speech and language sessions and eighty minutes per month of individual speech services for defendant. (*Id.* at 15.) Mr. Ferrell initially proposed reducing the offer by eliminating the one-on-one time, but ultimately agreed to keep the eighty monthly minutes when defendant's special education teacher offered to personally conduct the individual services. (*Id.*)

Ms. Pool requested additional one-on-one speech and language services for defendant, but Mr. Ferrell responded that he would not offer additional individual minutes because "the resources aren't available." (*Id.* at 16.)[6] However, despite attempts by defendant's parents to

---

[6] Mr. Ferrell testified at the hearing before the ALJ that there was no reason for the IEP to discuss additional one-on-one speech services because defendant did not request a specific number of additional service minutes, and there was nothing to support that defendant required additional individual speech and language services. (Id. at 16.)

have plaintiff discuss defendant's speech needs prior to a determination of the amount of speech services required to meet IEP goals, plaintiff did not discuss defendant's communication goals until after it made an offer of speech and language services. (*Id.*)

Unable to complete the IEP process at the March 31, 2016 meeting, defendant's IEP team met once again on April 13, 2016. (*Id.* at 18.) This meeting did not focus on completing the IEP. (*Id.*) Instead, it focused on a separate incident in which defendant had injured a classmate. (*Id.*) The team agreed to conclude the annual team meeting on April 19, 2016. (*Id.*)

The April 19, 2016 meeting was attended by Mr. Ferrell, Ms. Minjares, Ms. Hammer, the general and special education teachers, defendant's parent, Ms. Pool, and Ms. Braker. (*Id.*) Neither Ms. Winchell nor any speech language pathologist was in attendance. (*Id.*) The team reviewed defendant's goals. (*Id.*) Plaintiff had offered defendant 272 minutes of specialized academic instruction per day during the regular school year through its March 2016 IEP. (*Id.*) For the extended school year, plaintiff offered 240 minutes of specialized academic instruction in a special day class, eighty minutes per month of group speech services, and forty minutes per month of individual speech and language services. (*Id.*)[7] Thus, plaintiff made its offer of speech services for the extended school year without an IEP team discussion of defendant's potential for regression of her speech and language skills during the summer break or for her limited recoupment of those skills during the following school year. (*Id.*) Defendant's parent did not consent to the March and April 2016 IEP offers. (*Id.* at 19.)

On May 16, 2016, defendant's parent signed the consent page of the IEP document and wrote a note referencing a "Parent Attachment" to the IEP. (*Id.*) That attachment specified which portions of the IEP offer parent agreed to and to which they did not. (*Id.*) Defendant contends that parent's May 2016 consent to the IEP offer supplants the March 2014 stay put placement. (*Id.*) Plaintiff maintains that parent did not consent to the March 2016 IEP offer. (*Id.*)

---

[7] Mr. Ferrell testified at the hearing before the ALJ that the offer of speech and language services for the extended school year would be proportionately reduced by half given the shortened school day during the summer. (*Id.* at 18.)

8

In mid-May, defendant's parent informed plaintiff in writing of her intention to place defendant at Lindamood Bell Learning Processes, a non-public agency that provides language development services, for the 2016 summer period and requested that plaintiff fund defendant's attendance to this program. (*Id.*) Plaintiff sent the parent a written notice denying her request on June 6, 2016. (*Id.*) Nonetheless, defendant completed the Talkies program at Lindamood Bell from June 13, 2016 to July 22, 2016, which taught her sentence structure and how to use words to describe pictures and events. (*Id.* at 20.) The executive director of the program, Anne Perry, testified that these skills form the basis for pragmatic communication. (*Id.*) Following the six-week program, defendant showed a ten-month growth in her receptive vocabulary, demonstrating a significant development of her language and communication abilities. (*Id.*)

Defendant's parent paid a deposit of $840 and incurred weekly fees of $2,360 for a total amount of $15,000 for defendant's six-week program at Lindamood Bell. (*Id.*) Defendant's parents also incurred costs of $112.32 for each day of travel to Santa Clarita for the twenty-nine days that defendant attended the Talkies program. (*Id.*)

**B.     The Administrative Hearing**

Defendant filed a due process complaint, which initiated the hearing process, on August 12, 2016. (*Id.* at 7.) Following the parties' joint request for a continuance, the due process hearing took place on October 11 and 12, 2016. (*Id.*) The ALJ heard testimony from defendant's parent Brenda Markham, Lindamood Bell's executive director Anne Perry, plaintiff's administrator Dennis Ferrell, and speech pathologist Carolyn Winchell. As formulated by the ALJ, the hearing concerned the issue of whether plaintiff denied defendant a FAPE in defendant's March 2016 IEP by predetermining the speech and language services that it offered based on the availability of personnel and not on defendant's needs for speech service. (*Id.* at 8.)

Following the filing of closing briefs by the parties, the ALJ issued a decision on December 1, 2016, finding that plaintiff went to the IEP meetings with a predetermined offer of speech and language services and thereby substantively deprived defendant's parent the opportunity to participate in the IEP meeting and subsequently denied defendant a FAPE. (*Id.* at 28.) The ALJ also ordered plaintiff to fully fund defendant's 2016 summer program at

Lindamood Bell, including mileage costs. (*Id.* at 29.) Plaintiff has appealed from the decision of the due process hearing by filing this action pursuant to 20 U.S.C. § 1415(i)(2). (Doc. No. 1 at 1.)

## DISCUSSION

Plaintiff raises five issues in this appeal: (1) whether the ALJ erred by misapplying the stay put doctrine; (2) whether the ALJ erred by misapplying the Ninth Circuit's holding in *Anchorage Sch. Dist. V. M.P.*, 689 F.3d 1047 (9th Cir. 2012); (3) whether the ALJ erred by ignoring significant evidence at the administrative hearing; (4) whether the ALJ erred in abusing her discretion in awarding defendant reimbursement for a private reading program; and (5) whether defendant is a prevailing party entitled to reasonable attorney's fees under the IDEA. (Doc. No. 25 at 2.) Each of these issues is discussed separately below.

**A.     Whether the ALJ Erred by Misapplying the Stay-Put Doctrine**

Plaintiff first argues that the ALJ misapplied the stay put doctrine and erroneously held that the district committed a procedural violation of the IDEA that amounted to a denial of the defendant's parent right of participation, thus denying the student a FAPE. (Doc. No. 25 at 18.) Specifically, plaintiff disagrees with the ALJ's factual finding that the district made its offer of speech services based on staff availability. (*Id.* at 21.) Instead, plaintiff argues that the ALJ did not consider that it had limited information regarding defendant's levels of performance, that defendant was making progress without additional speech services, and that plaintiff was never empowered to make unilateral changes to defendant's placement. (*Id.* at 21–22.)

The stay put doctrine states that "during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing . . ., unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement." 34 C.F.R. § 300.518. The main purpose of the stay put provision is to ensure that the student's educational program is stable during the pendency of a due process dispute and to prevent unilateral changes in that program by a school district. *K.D. v. Dept. of Educ.*, 665 F.3d 1110, 1120 (9th Cir. 2011); *see* 34 C.F.R. § 300.518(a).

/////

Here, the ALJ conducted a careful and thorough consideration of the evidence in finding that the district's offer of speech and language services was predetermined. In finding that plaintiff's offer was not open for discussion during the IEP team meetings and based on the availability of its personnel, the ALJ relied on evidence, including witness testimonies, IEP meeting minutes, and a transcript of the March 31, 2016 IEP meeting. (A.R.880–1194.)

Plaintiff held a review of the December 2015 annual IEP team meeting on March 3, March 31, April 13, and April 19 of 2016. (Doc. No. 1 at 13.) For each of the meetings, the ALJ thoroughly analyzed what occurred and assessed whether there was evidence that the IEP was predetermined. In reviewing the evidence presented from the March 3, 2016 meeting, the ALJ found that the IEP team did not even discuss defendant's need for speech and language services. (*Id.*) Though Mr. Ferrell testified at the hearing before the ALJ that the IEP team discussed defendant's needs, the ALJ weighed this testimony against contradictory evidence from Ms. Winchell and the absence of any such discussion in the meeting notes. (*Id.*)

The ALJ reviewed a notarized and certified transcription of the March 31, 2016 meeting and also had witnesses testify as to what occurred during that meeting. Although plaintiff contends that the issue of speech services was discussed over multiple days, the ALJ decision did not find Mr. Ferrell's testimony persuasive in that respect. For instance, Mr. Ferrell "testified that he did not offer additional one-to-one speech services [to defendant] because there was nothing to support that [defendant] required additional minutes of individual speech and language services." (*Id.* at 16.) The ALJ found, however, that "Mr. Ferrell's testimony was not compelling because he did not solicit Ms. Winchell's opinion or that of any of the other team member (sic) as to whether Student required more speech services to address her significant communication deficits." (*Id.*) In short, the evidence regarding the April 19, 2016 meeting also supported the ALJ's conclusion that plaintiff "unilaterally determined its offer of speech and language services prior to the IEP meeting and presented the offer without the intention of changing that offer." (*Id.* at 19.)

Plaintiff makes the argument that regardless of how the IEP was formulated, defendant's parent ultimately had to "provide consent to the proposed IEP" since it was "never empowered to

make unilateral changes to [defendant's] placement." (Doc. No. 25 at 21.) The ALJ addressed this argument in the decision, observing that:

> There is no legal or logical support for Tehachapi's contention that it was free to disregard Parent and Student's procedural safeguards pursuant to its theory of stay put. If Tehachapi's theory is given credence, whenever a student invoked stay put, a procedural violation could never result in a denial of FAPE.

(Doc. No. 1 at 28.) The court also does not find plaintiff's argument on this point to be persuasive because the procedural requirements of the IDEA are to ensure meaningful parent participation in the formulation of an IEP, rather than merely signing off on a predetermined final product. *M.C. by and through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1197 (9th Cir. 2017) (noting that a unilateral amendment of an IEP is a per se procedural violation of the IDEA because it impairs parents' right to participate at every step of the IEP drafting process); *see also Tamalpais Union High School District v. D.W.*, 271 F. Supp. 3d 1152, 1161 (N.D. Cal. 2017). If the court were to accept plaintiff's argument, a stay put order would always preclude a procedural violation resulting in the denial of FAPE, which does not facilitate meaningful parental participation. This cannot be. Accordingly, the court rejects plaintiff's argument and concludes that the ALJ did not abuse her discretion in applying the stay put doctrine.

**B.  Whether the ALJ Erred in Misapplying the Ninth Circuit Holding in *Anchorage***

Plaintiff argues that the ALJ erred in misapplying the decision in *Anchorage Sch. Dist. V. M.P.*, 689 F.3d 1047 (9th Cir. 2012). (Doc. No. 25 at 22.) Plaintiff contends that the holding in *Anchorage* stands for the proposition "that the stay-put doctrine does not excuse a public school from refusing to make additional offers of FAPE." (*Id.* at 23.) Defendant argues that this is not the proposition for which the ALJ cited *Anchorage* and that the points raised by plaintiff in attempting to distinguishes this case from *Anchorage* are irrelevant here. (Doc. No. 26 at 20–21.) As explained below, the court concludes that the ALJ correctly applied the holding in *Anchorage* to this case.

In *Anchorage*, the parents exercised their right to stay put during a pending administrative proceeding. *Anchorage*, 689 F.3d at 1052. After hearing the parents' response,

the school district unilaterally postponed any further efforts to develop an updated IEP until the appeal from the administrative proceeding was determined. (*Id.*) The Ninth Circuit held that the school district denied the student a FAPE when it relied on an outdated and obsolete IEP that did not enable the student to receive educational benefits. (*Id.* at 1058.) Plaintiff argues that here, in contrast to the situation in *Anchorage*, plaintiff held multiple IEP meetings in quick succession and received a variety of reports regarding defendant, none of which indicated that she was regressing academically. (Doc. No. 25 at 24.) However, the distinction made by plaintiff is one without meaning, given the ALJ's factual finding that the district did not consider defendant's speech and language needs in making an IEP offer and instead only relied on consideration of its resources. (*See* Doc. No. 1 at 26.)

Additionally, the ALJ cited the decision in *Anchorage* for the proposition that "[a]n agency cannot eschew its affirmative duties under the IDEA by blaming the parents." (Doc. No. 1 at 24.) The ALJ assessed plaintiff's efforts to discuss defendant's request for additional individual student and language services, observing that "[t]he law requires Tehachapi to engage in an open discussion about Student's speech therapy needs and her request for increased services, and to show a willingness to entertain an alternative offer." (*Id.*) Mr. Ferrell testified at the hearing that the district did not have an open discussion about K.M.'s needs because her parents did not make a specific request for additional minutes of speech and language services. (*Id.* at 16.) The ALJ addressed Mr. Ferrell's testimony in this regard by citing the decision in Anchorage to show that the district could not blame the parents for failing to ensure meaningful participation. *See Anchorage*, 689 F.3d at 1055.

Giving due deference to the ALJ's thorough, careful and detailed 24–page decision and the credibility determinations made therein, *see A.M ex rel. Marshall*, 627 F.3d at 778, the court rejects plaintiff's argument with respect to this second issue presented on appeal.

C. **Whether the ALJ Erred by Ignoring Significant Evidence at the Administrative Hearing**

Next, plaintiff asserts that the ALJ erred by ignoring significant evidence presented at the administrative hearing and, in doing so, demonstrated bias against plaintiff and its witnesses.

(Doc. No. 25 at 24.) Plaintiff highlights defendant's parent's expressed concern during the hearing that the IEP was not closing defendant's educational gap and that, at most, defendant was demonstrating "minimal" progress. (A.R. 1260-62.) Plaintiff argues that "[i]f a child is not capable of performing at grade level, it is not a denial of FAPE nor a violation of the IDEA to provide an IEP that does not intend to raise the Student's level of performance to grade level within one calendar year." (Doc. No. 25 at 25.)

The argument misses the mark. The ALJ determined that plaintiff's predetermination of its March 2016 offer of speech and language services based on its limited resources significantly impeded the parents' ability to meaningfully participate in the decision-making process. (Doc. No. 1 at 26.) The ALJ concluded that plaintiff's IEP team members determined its offer of services without considering the results of Ms. Scheen's independent speech assessment, which recommended an increase in speech and language services. (*Id.*) The ALJ also found that the district's predetermination of its offer denied the student a FAPE because the team failed to consider alternative offers of speech and language services that would have assisted her continued communication deficits. (*Id.*)

Plaintiff argues that the ALJ gave undue weight to the contents of a transcript of one of the four IEP meetings and disregarded evidence from the other three meetings. (Doc. No. 25 at 25.) Defendant contends that the transcript for the March 31, 2016 IEP meeting was certified and was thus more accurate than paraphrased notes or Mr. Ferrell's recollection, elicited through testimony at the hearing. (Doc. No. 26 at 21.) Although the ALJ decision provides more details about what occurred at and was discussed during the March 31, 2016 meeting, it also provided substantial analysis of the evidence associated with defendant's annual IEP meetings, which dated back to March 2014 and included discussion of each of the four IEP meetings in 2016. (*See* Doc. No. 1 at 8–19.) The court has no basis upon which to conclude that there was undue weight given by the ALJ to any one piece of evidence. Plaintiff has therefore not shown any error in the ALJ decision on this basis.

/////

/////

**D.      Whether the ALJ Erred by Abusing Her Discretion in Awarding Defendant Reimbursement for a Private Reading Program**

Plaintiff argues that the ALJ erred by abusing her discretion in awarding reimbursement to defendant for a private reading program that did not relate to the student's due process complaint regarding speech and language services. (Doc. No. 25 at 26.) Plaintiff argues that despite having broad discretion to craft a remedy, the ALJ abused her discretion by awarding "equitable relief that is not tied to the procedural violation or the needs of the Student." (*Id.* at 27.)

The court disagrees with plaintiff's assessment in this regard. The impasse that was reached at the March 31, 2016 IEP meeting involved speech and language services. (Doc. No. 1 at 14–17.) As an alternative to the services offered by plaintiff, defendant's parents enrolled her in a program at Lindamood Bell focusing on vocabulary development. (*Id.* at 18.) The factual record developed before the ALJ reflects that the purpose of the Talkies program "was to develop language, not to target [defendant's] IEP speech goals." (*Id.*) However, after six weeks in that program, defendant could "verbalize six to seven-word sentences, and make requests using complete sentences." (*Id.*) Given defendant's history of being unable to communicate effectively, defendant's improved communication abilities, following her participation in the Talkies program, demonstrates that the services she received at Lindamood Bell were directly related to IEP speech goals of helping her verbalize complete sentences. (*See id.* at 11–14, 19.) The Talkies program provided the services and educational opportunity that defendant was denied when plaintiff predetermined its offer of speech and language services at the March 2016 IEP meeting.

Given the evidence of record, plaintiff has not carried its burden on appeal of demonstrating that the ALJ erred by awarding defendant reimbursement for the Talkies program.

**E.  Whether Defendant Is a Prevailing Party Entitled to Reasonable Attorney's Fees Under the IDEA**

In the final issue presented on appeal, plaintiff contends that defendant is not entitled to the attorney's fees she is likely to seek if she prevails because: 1) the ALJ's decision should be overturned; and 2) the hourly rate sought by defendant's counsel and the number of hours claimed

to have been expended are unreasonable. (Doc. No. 25 at 28.) Defendant responds that her attorney's rates are not unreasonable based on local hourly rates for attorneys who specialize in IDEA law. (Doc. No. 26 at 13.)

The IDEA states that a court has the discretion to award reasonable attorneys' fees to the prevailing party, based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. 20 U.S.C. § 1415(i)(3).

Here, plaintiff argues that defendant's counsel is not entitled to attorney's fees because the OAH decision should be overturned. (Doc. No. 25 at 28.) If the OAH decision is not overturned, as this court has now determined it should not, plaintiff contends that counsel for defendant "will seek a rate that is not within the Eastern District Lodestar and will request compensation for an unreasonable number of hours." (*Id.*)

Although defendant has filed six exhibits in support of the award of attorneys' fees and costs (Doc. Nos. 26 and 27), the information currently before the court provides an insufficient basis upon which to determine the reasonableness of defense counsel's fee request. As suggested by plaintiff in its reply brief, defendant's request for the award of fees is premature. The prevailing party, in this the defendant, should file a separate motion for attorneys' fees and costs pursuant to Local Rule 293(a). (Doc. No. 28 at 2.)

## CONCLUSION

For all the reasons set forth above:

1. Plaintiff's arguments on appeal are rejected and the ALJ decision is affirmed;
2. Plaintiff's motion to submit the matter on the briefs (Doc. No. 25) is denied; and
3. Defendant, as the prevailing party, may file a separate motion with this court requesting the award of attorney's fees and costs no later than **twenty-eight (28) days** following service of this order.

IT IS SO ORDERED.

Dated: **September 28, 2018**

UNITED STATES DISTRICT JUDGE

16