LAW OFFICE OF ANDRÉA MARCUS
*A Professional Corporation*
133 E. De La Guerra Street, #143
Santa Barbara, CA 93101-2247
Telephone: (888) 215-9021
Fax: (888) 215-9021
andrea@andreamarcuslaw.com

Attorney for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TEHACHAPI UNIFIED SCHOOL DISTRICT<br><br><br>        Plaintiff,<br><br> v.<br><br>K.M., a minor, by and through her parents and guardians ad litem, Dean Markham and Brenda Markham,<br><br>        Defendants. | **Case No.: 1:16-cv-01942-DAD-JLT**<br><br>DEFENDANT'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS FEES<br><br><br>DATE: NOVEMBER 20, 2018<br>TIME: 9:30 AM<br>COURTROOM 5, 7TH FLOOR |

i

# TABLE OF CONTENTS

**I.   INTRODUCTION** ................................................................................. **1**

**II.  BACKGROUND OF CASE** .................................................................. **4**

**III. SUMMARY OF CASE** ........................................................................ **5**

**IV. RELIEF SOUGHT BY PLAINTIFF** .................................................. **5**

**V.   ARGUMENT** ..................................................................................... **6**

   A.   AN AWARD OF ATTORNEY'S FEES TO THE PREVAILING PARTY IS

   ESSENTIAL TO IMPLEMENTING THE POLICIES OF THE IDEA. ....................... 6

   B.   PLAINTIFF'S HOURLY RATE IS REASONABLE ............................................ 8

**VII. CONCLUSION** ................................................................................ **12**

Case No.: 1:16-cv-01942-DAD-JLT
DEFENDANT'S NOTICE OF AND MOTION FOR ATTORNEYS FEES

**Cases**

*Bd. of Educ. v. Rowley,*
   458 U.S. 176, 179, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)................................................2

*Borengasser v. Arkansas State Bd. of Educ.,*
   996 F.2d 196, 199 (8th Cir. 1993)....................................................................................6

*Cobb Cty. Sch. Dist. v. D.B.,*
   2016 U.S. App. LEXIS 20383, at 2, n.2 (11th Cir., 2016)..............................................4

*Fontenot v. Louisiana Bd. of Elementary & Secondary Educ.,*
   805 F.2d 1222, 1223 (5th Cir. 1986) ..............................................................................6

*Forest Grove Sch. Dist. v. T.A.,*
   557 U.S. 230, 238 (2009).................................................................................................3

*Gross ex rel. Gross v. Perrysburg Exempted Village Sch. Dist.,*
   306 F. Supp. 2d 726, 736 (N.D. Ohio 2004)...................................................................8

*Honig v. Doe,*
   484 U.S. 305, 311 (1988).................................................................................................3

*K.M. ex rel. Bright v. Tustin Unified School Dist,.*
   (C.D. Cal. 2015) 78 F.Supp.3d 1289, 1304.....................................................................9

*Mr. & Mrs. W. v. Malito*
   (C.D. Ill., 1993) 1993 WL 764591 ............................................................................9, 10

*Mr. & Mrs. W. v. Malito*
   (C.D. Ill., 1993) 1993 WL 764591, at 1.........................................................................10

*Ojai Unified Sch. Dist. v. Jackson,*
   4 F.3d 1467, 1469 (9th Cir.1993)....................................................................................8

*Schaffer v. Weast,*
   546 U.S. 49, 53 (2005).....................................................................................................3

*Smith v. Robinson,*
   468 U.S. 992 (1984).........................................................................................................6

Case No.: 1:16-cv-01942-DAD-JLT
DEFENDANT'S NOTICE OF AND MOTION FOR ATTORNEYS FEES

*Sytsema v. Acad. Sch. Dist.,*
 No. 20, 538 F.3d 1306, 1312 (10th Cir.2008) ....................................................................2

**Statutes**
20 U.S.C. § 1412(a)(1)(A) .........................................................................................................2
20 U.S.C. § 1415 ...............................................................................................................3, 5, 9
20 U.S.C. § 1415(f). ..................................................................................................................3
20 U.S.C §1415(i)(3)(G) ........................................................................................................10
20 U.S.C. § 1400(d)(1)(A) ........................................................................................................2
20 U.S.C. § 1400(d)(1)(B) ........................................................................................................3
20 U.S.C. § 1414(a)(D). ............................................................................................................3
20 U.S.C. § 1414(d) ..................................................................................................................2
20 U.S.C. § 1414(d)(1)(A)(I) ....................................................................................................2
20 U.S.C. § 1414(d)(1)(B) ........................................................................................................3
20 U.S.C. § 1415(i)(3) .......................................................................................................4, 6, 9
20 U.S.C. § 1415(i)(3)(C) .........................................................................................................9
20 U.S.C. § 1400(d)(1)(B) ........................................................................................................3
20 U.S.C. § 1414(d)(3)(A)(ii) ...................................................................................................2
20 U.S.C. § 1415(i)(3)(B)(i)(I) .............................................................................................3, 4
Cal. Educ. §56507 .....................................................................................................................4
Handicapped Children's Protection Act ................................................................................6, 7

**Other Authorities**
130 Cong. Rec. S9079 (daily ed. July 24, 1984) ......................................................................7
Handicapped Children's Protection Act of 1985: Hearing Before the Subcomm, on the Handicapped of
 the Senate Comm. on Labor & Human Resources, 99th Cong., 1st Sess. at 24-25 (May 16, 1985) .......7
http://kern.org/schools-a-z/ ......................................................................................................11
Lisa Lukasik, Special Education Litigation: An Empirical Analysis of North Carolina's First Tier, 118
 W. Va. L. Rev. 735, 775 (2016). ...........................................................................................7
Ruth Colker, California Hearing Officer Decisions, Journal of the National Association of
 Administrative Law Judiciary, 2012 ......................................................................................8

Case No.: 1:16-cv-01942-DAD-JLT
DEFENDANT'S NOTICE OF AND MOTION FOR ATTORNEYS FEES

# I.  INTRODUCTION

Mr. and Ms. Markham won the sole remedy they sought at hearing: reimbursement for the services they were required to fund privately, when the District denied their daughter services necessary to help her acquire language.  This amounted to $18,257.28, inclusive of Ms. Markham's mileage costs, facilitating this intervention for her daughter.

Instead of agreeing to pay the ordered reimbursement, the District appealed the administrative decision to this Court, and argued and litigated this matter over $18,257.28 in reimbursement.

The ensuing protracted litigation initiated by Plaintiff has included:

a.   This matter before the Eastern District Court appealing the administrative decision (inclusive of a baseless "Motion to Stay" the administrative order to pay the Markham's, which this Court properly denied);

b.   An appeal to the California Department of Education ("CDE") to stay its order that the Plaintiff comply with the administrative order, and reimburse the Markham's. CDE again ordered TUSD to reimburse the Markham's and added an order to pay interest, and threatened to withdraw state funding to TUSD for lack of compliance with its order to pay the Markham's.  TUSD finally complied and paid the Markham's over a year after initially being ordered to, plus interest, as ordered.  The check for $20,099.28, was issued to the Markham's on November 6, 2017;

c.   The Plaintiff also filed an action against the CDE in the Superior Court of California, to stay the CDE's order to pay the Markham's. From the records obtained from the Superior Court, it appears the TUSD dismissed its action in the Superior Court, before a decision was rendered.

Each of these acts of litigation have required the Markham's to procure legal assistance in protecting the remedy awarded them in the administrative decision.

1

Each of these acts of litigation have caused the Markham's to take precious time away from earning a living and parenting their autistic child.

On September 28, 2018, this Court affirmed the administrative decision and order for reimbursement, and ordered the Markham's to file this Motion Requesting the Award of Attorneys' fees.  The Attorneys' fees and costs sought are as follows:

   a.  Attorneys' fees and costs for winning judgment ordering such reimbursement at the administrative level; $44,632.06.

   b.  Attorneys' fees and costs for defending this appeal of that decision: $32,090.00.

The Individuals with Disabilities Education Act ("IDEA") provides federal funding to states to assist with the education of disabled children on the condition that states comply with the IDEA's "extensive goals and procedures." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 179, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). One of the IDEA's stated purposes is to "prepare [children] for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). States that receive federal funding under the IDEA must provide all eligible students with a free appropriate public education ("FAPE"). Id. § 1412(a)(1)(A); *Sytsema v. Acad. Sch. Dist*. No. 20, 538 F.3d 1306, 1312 (10th Cir.2008). "To provide an eligible student with a FAPE, states must develop an [Individualized Education Plan] for each qualifying student." *Sytsema*, 538 F.3d at 1312. An Individualized Education Plan ("IEP") is a detailed written document, which describes the student's educational goals for an academic year and establishes a plan to achieve those goals. See id.; 20 U.S.C. § 1414(d)(1)(A)(I). The IDEA sets forth detailed procedures through which an IEP is to be developed at a meeting with the participation of the child's parents, teachers, special education teachers, school officials, and other parties with knowledge of the child's special needs. See generally, 20 U.S.C. § 1414(d).  In developing an IEP, school officials must consider a parent's request for particular educational programs or services at an IEP meeting. 20 U.S.C. 1414(d)(3)(A)(ii).

2

The IDEA requires states to develop and maintain procedural safeguards to ensure parent participation in decision-making regarding their child's IEP, and that disabled children otherwise receive a FAPE. See id. § 1415. Such procedures include an impartial due process hearing to address parental complaints over a school district's actions with respect to a child's IEP. Id. § 1415(f).

The award of attorneys' fees furthers the essential purpose of the IDEA "to ensure that all children with disabilities are provided with a free appropriate public education . . . [and] to assure that the rights of [such] children and their parents or guardians are protected." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 238 (2009) (internal quotation omitted). "Congress repeatedly emphasized throughout the [IDEA] the importance and indeed necessity of parental participation in both the development of the [Individualized Education Plan ("IEP")] and any subsequent assessments of its effectiveness." *Honig v. Doe,* 484 U.S. 305, 311 (1988).

The IDEA's extensive set of procedural safeguards includes the right to seek administrative review of school district determinations that impact a child's right to FAPE. The IDEA requires these safeguards deemed to be the "core of the statute," be exercised by parents in order to protect the substantive rights provided to their children. *Schaffer v. Weast*, 546 U.S. 49, 53 (2005) (internal citation omitted); *Honig,* 484 U.S. at 311. Recognizing the importance of parental advocacy to ensure the protection of the rights of children with disabilities, Congress included parents in every critical point of the statutory scheme. See, e.g., 20 U.S.C. § 1400(d)(1)(B); 20 U.S.C. § 1414(a)(D); 20 U.S.C. § 1414(d)(1)(B).

To further the purpose of the IDEA and to ensure all parents the opportunity to enforce it, Congress specified that prevailing parents would be entitled to an award of attorneys' fees: "In general in an action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs - (I) to a prevailing party who is the parent of a child with a disability."  20 U.S.C.§

Case No.: 1:16-cv-01942-DAD-JLT
DEFENDANT'S NOTICE OF AND MOTION FOR ATTORNEYS FEES

1415(i)(3)(B)(i)(I).   *See Cobb Cty. Sch. Dist. v. D.B.*, 2016 U.S. App. LEXIS 20383, at 2, n.2 (11th Cir., 2016)."  The matter before this Court is a request for attorney's fees and costs as the prevailing party on the sole issue at hearing in a Due Process Hearing pursuant to 20 U.S.C. § 1415(i)(3) and Cal. Educ. §56507, and for fees and costs associated with this matter now before this Court.

## II. BACKGROUND OF CASE

   K.M. is an 11-year old girl with autism.  K.M.'s autism is a developmental disability, which delays and deviates K.M.'s course of development of typical communication skills and behavioral norms, from that of her typically-developing peers.

   Communication and behavioral skills are key to K.M.'s development, and will determine her ability to live independently as an adult and contribute to her community, instead of draining public resources, and being institutionalized throughout life. K.M. has average intelligence.  Nonetheless, the TUSD refused to comply with the IDEA in granting speech and language (communication) instruction and remediation based upon K.M.'s unique needs.  Instead, TUSD determined K.M.'s speech and language services based upon one of its Speech Pathologist's preferred schedule, in violation of the IDEA.

    On August 12, 2016, K.M. filed a request for due process hearing with the Office of Administrative Hearings ("OAH") to determine whether TUSD had denied K.M. a FAPE by "interfering with her parents' right to participate" in the IEP meeting, when in lieu of parent participation in a IEP team decision, it determined K.M.'s speech services (or lack thereof) upon one of its speech pathologist's schedules.  A Pre-Hearing Conference was held on October 3, 2016, and a Due Process Hearing was held in Van Nuys, California, October 11 and 12, 2016.   K.M.'s requested remediation was reimbursement for her parents' costs in providing Lindamod-Bell© remediation to K.M.

4

Plaintiff retained the Law Office of Andréa Marcus, in Santa Barbara, to represent her on a contingency fee basis, in connection with the due process proceedings.  Ms. Marcus and her associate at the time, Kelly Kaeser, represented K.M. at the due process hearing.

OAH issued its decision on December 1, 2016, naming K.M. as the prevailing party, and awarding her the reimbursement she sought.  TUSD appealed that decision to this Court.

## III.      SUMMARY OF CASE

Because Plaintiff was the prevailing party in the due process proceedings, Plaintiff is entitled to have her reasonable attorneys' fees and expenses paid in the amount of $44,632.06. However, because TUSD appealed that decision, K.M. is  also the prevailing party for that appeal, and is entitled to have her reasonable attorneys' fees and expenses paid for defending the appeal, in the amount of $32,090.00, pursuant to 20 U.S.C. § 1415, as well as her fees and costs incurred in the administrative due process hearing process, in OAH Case number 2016080786.

## IV.      RELIEF SOUGHT BY PLAINTIFF

1.      Reasonable Attorneys' Fees and expenses incurred in the administrative proceeding in the total amount of not less than $44,632.06.

2.      For costs, disbursements, and reasonable attorneys' fees in bringing and prosecuting this action, which is anticipated to total $32,090.00, after issuing K.M.'s Reply to TUSD's Opposition to its motion, if any, and participation in the hearing on the motion, if any.

5

3.     For interest thereon provided by law, in the event that any amount in fees awarded remains unpaid pending action to enforce this Court's Order.

4.     For such other relief as may be just and proper.

## V. ARGUMENT

### A.  AN AWARD OF ATTORNEY'S FEES TO THE PREVAILING PARTY IS ESSENTIAL TO IMPLEMENTING THE POLICIES OF THE IDEA.

The parental right to recover attorneys' fees is one of the IDEA's most important procedural safeguards. Without the availability of fees, it would be impossible for most parents to obtain representation to enforce their children's rights. Congress considered it so important that when the Supreme Court found that attorneys' fees could not be awarded to prevailing parents under IDEA's predecessor statute in *Smith v. Robinson*, 468 U.S. 992 (1984), Congress acted "swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as misinterpretation of its intent," by enacting the Handicapped Children's Protection Act ("HCPA") to permit parents to recover attorneys' fees if they prevail. *Fontenot v. Louisiana Bd. of Elementary & Secondary Educ.*, 805 F.2d 1222, 1223 (5th Cir. 1986).  The IDEA thus allows a "court, in its discretion, [to] award reasonable attorneys' fees ... to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3).

Courts have consistently held that fees should "ordinarily" be awarded to prevailing parents "unless special circumstances make such an award unjust." *Borengasser v. Arkansas State Bd. of Educ.*, 996 F.2d 196, 199 (8th Cir. 1993). Thus, absent special circumstances, it is an abuse of discretion to deny prevailing parents attorneys' fees.  *Borengrasser*, 996 F.2d at 199.

6

Attorneys' fees are critical to vindicating rights under the IDEA.  Most families of children entitled to special education services have limited resources, both because of family income and the strain raising a child with a disability can have on a family's finances. One-quarter of Students with IEPs have families with incomes below the poverty line.  Congress understood that, absent a fee-shifting framework as part of the IDEA's due process procedures, many families would be unable to retain counsel to undertake special education cases, and, the IDEA would largely go unenforced. Senator Weicker explained that, without access to attorneys' fees, "the economic resources of parents become crucial to the protection of their children's rights regardless of the merits of the claim." 130 Cong. Rec. S9079 (daily ed. July 24, 1984).  *See also Handicapped Children's Protection Act of 1985: Hearing Before the Subcomm, on the Handicapped of the Senate Comm. on Labor & Human Resources,* 99th Cong., 1st Sess. at 24-25 (May 16, 1985).

Parents proceeding in pro-se face dismal odds of success under the IDEA.  Recent studies have confirmed that, without counsel, parents usually do not have the experience or ability to "navigat[e] the intricacies of disability definitions, evaluations processes, the developments of IEPs, the complex procedural safeguards, among other provisions in the statute."[1]  In a study of prevailing rates of success through litigating such matters before

---

[1] Lisa Lukasik, *Special Education Litigation: An Empirical Analysis of North Carolina's First Tier*, 118 W. Va. L. Rev. 735, 775 (2016). For example, the data from twelve years of North Carolina IDEA due process hearings showed that pro se parents only prevailed on at least one issue in only 11.1% of the cases, and in full in only once, for 2.2% of the cases, and that was with the help of a non-attorney advocate. Id. In contrast, when represented by counsel, parents prevailed on at least one issue more than half the time

*footnote continued on next page*

7

1    the Office of Administrative hearings in California, of the twenty cases in which a lawyer

2    did not represent parents, the parents prevailed in only one case.[2]

3

4    **B.  PLAINTIFF'S HOURLY RATE IS REASONABLE**

5

6         Special education law is truly a specialized area of practice, which requires years

7    of experience to effectively practice. Each action is unique, involving children with

8    different disabilities, and thereby requires individualized analysis as to the needs of the

9    child, and what services the school district is providing and can provide to the child. The

10   Ninth Circuit has described special education cases as involving "a complex web of

11   federal and state statutes and regulations."  *Ojai Unified Sch. Dist. v. Jackson,* 4 F.3d

12   1467, 1469 (9th Cir.1993); *see also Gross ex rel. Gross v. Perrysburg Exempted Village

13   Sch. Dist.,* 306 F. Supp. 2d 726, 736 (N.D. Ohio 2004); (noting "the complexity and

14   uniqueness of IDEA cases and the different ways the same cases can apply to individual

15   circumstances").  Ms. Marcus is among the most experienced IDEA attorneys in the state,

16   with nearly twenty years of IDEA work. (Exhibit A)

17        The unique expertise and experience necessary for special education law is the basis

18   for the fact that Ms. Marcus was awarded fees at the rate of $425.00 and $450.00 per hour

19   by this Court recently (Exhibits B and C).  However, those rates were low given recent

20   awards for male colleagues (See Exhibits D and E), some with much less experience (See

21   award for $500.00 per hour, for male colleague with roughly half as much experience,

22   Exhibit F).  $250.00 per hour is reasonable for Monique Fierro, who had nearly two years

23   of experience as a Stanford-trained attorney at the time, and $275.00 per hour was

24   _____

25   (51.3%) and prevailed on the entire claim nearly one third of the time (30.8%). Id.

26   [2] Journal of the National Association of Administrative Law Judiciary, Fall 2012 32 J.
     Nat'l Ass'n Admin. L. Judiciary 461, Ruth Colker

27                                                                    8

28   Case No.: 1:16-cv-01942-DAD-JLT
     DEFENDANT'S NOTICE OF AND MOTION FOR ATTORNEYS FEES

reasonable for Lyndsey Gallagher (Exhibit G), with nearly three years of experience practicing special education law at the time, and $300.00 per hour, reasonable for Kelly Kaeser, with nearly 13 years of legal experience (Exhibit H) as practitioners in the Central District of California, which has determined such fees for commensurate experience to be reasonable. [*K.M. ex rel. Bright v. Tustin Unified School Dist.* (C.D. Cal. 2015) 78 F.Supp.3d 1289, 1304, (determining David Grey's rate at $475.00 per hour three years ago, for work done as far back as six years ago), see also, declarations of: Daniel Shaw (Exhibit I); David Grey (Exhibit J).

Fees awarded under 20 U.S.C. § 1415 shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. [20 U.S.C. § 1415(i)(3)(C)].  However, here, it was necessary for Plaintiff to go outside their immediate community to obtain counsel with the specialized skills needed to handle cases under the IDEA, as there simply is no attorney in K.M.'s "community," who practices IDEA law, let alone, with the nearly two-decades of experience that Ms. Marcus has – or anyone willing to do so on a contingency fee basis. Therefore, the "prevailing community rate" under the IDEA (20 U.S.C.A. § 1415, should be the rate normally charged for such skills in the community where the plaintiff's counsel normally practices, or, in the small community of practitioners in California who are qualified to practice special education law.

In *Mr. & Mrs. W. v. Malito*, the court rejected the defendants' argument that the plaintiffs' counsel should be strictly limited to the local community's hourly rates for purposes of a fee award under 20 U.S.C.A. § 1415. The court accepted the plaintiffs' argument that "community" must have a broader scope when there were no available attorneys in the local community, finding that, in analyzing prevailing community rates, the pertinent questions should be whether services of like quality are truly available in the locality where the services are rendered and whether the party choosing the attorney from

9

elsewhere acted reasonably in making that choice. *Mr. & Mrs. W. v. Malito* (C.D. Ill., 1993) 1993 WL 764591, at 1.

Contingent fees for IDEA cases do not offer the possibility of anything more than the chance that the attorney *may* be paid for their time, or the part of their time which is billable in advocating for a child, as no damages are possible under that statute. Therefore, there are few attorneys willing to practice it purely on contingency - anywhere.

The hours billed were all necessary for the success won, and meticulously and contemporarily tracked.  There were many additional hours spent in preparation for the hearing and in research and briefing that were not reflected in the bill, as the variety of scenarios in IDEA law create novel questions of law for even the most seasoned attorneys.  Here, the interplay between the American Disabilities Act violation and the IDEA violation had to be carefully considered before filing the complaint such that the desired outcome for K.M. could be achieved.

The Court should accept the 52.9 hours claimed for the underlying administrative matter as reasonable.  After receiving Plaintiff's itemized invoice and Complaint, Defendant waived any argument that the hours expended in the underlying matter were unreasonable by failing to assert that affirmative defense in its answer.

## C.  THE DEFENDANT UNREASONABLY PROTRACTED LITIGATION

Yet another reason this Court should not reduce fees, is TUSD's nonsensical Motion to Stay, and relentless assertions of unsupportable and/or irrelevant facts and legal arguments in its pleadings.  K.M.'s attorney had to spend a great deal of time responding to TUSD's motions and pleadings, which succeeding only in delaying its ultimate payment of reimbursement to K.M.'s parents.  The Court's ability to reduce the fees requested is constrained by 20 U.S.C §1415(i)(3)(G) if the "local educational agency unreasonably

10

protracted the final resolution of the action or proceeding. . . ." The evidence shows that TUSD did just this.

TUSD's anticipated argument that Kern County does have attorneys and K.M.'s parents should have used a Kern County special education attorney also fails.   This argument has already failed before the Eastern District, twice.   See also, the attached declarations of Rice and Padilla (Exhibits K, and L, respectively), which establish that there are no special education attorneys similarly qualified in all of Kern County.   This is not a problem unique to Kern County.   It is typically the case that the rural poor and working-class have little access to legal representation at all, let alone in a highly specialized area of law such as special education law.   [See Exhibits M and N: Improving Civil Justice in Rural California: "A Report of the California Commission on Access to Justice" September 2010, "Child Reassessed for Special Needs."   And, "Shaping the Future of Justice: 'Effective Recruitment and Retention of Civil Legal Aid Attorneys in California,'" Prepared for the Legal Aid Association of California, April 2010, regarding the challenges of hiring and retaining attorneys who will work for the poor in rural areas.

Defendant's Response to Interrogatories in a related case make the same point more dramatically (Exhibit O): "after research and consulting with counsel. . ." Defendant listed all attorneys who it believed were available to represent parents and/or special needs children under the IDEA in Kern County in the last five years at that point.   Defendant's law firm is particularly qualified to know of *any and all attorneys representing families in Kern County*, as it represents roughly 265 schools in Kern County. [3]   Nonetheless, **of the roughly 35 lawyers it listed, 31 of them are professionally based outside Kern County**.   Of the four remaining attorneys, based in Kern County and listed by Defendant,

---

[3] See SLS website (http://schoolslegalservice.org/clients-2/), and the list of Kern County District's listed on its superintendent of schools website:  http://kern.org/schools-a-z/

11

three were only members of the California Bar Association for three and four years, as of
Plaintiff retaining the Law Office of Andréa Marcus, with no showing of any experience
in special education law for either of them. (Durali Declaration, Exhibit P) The fourth
"local" attorney, who did once practice in Bakersfield, resigned in 2007 with charges
against her pending.  Defendant's list serves only to highlight the fact: there is not a single
lawyer in Kern County willing and able to advocate for children with special needs
pursuant to the IDEA with Ms. Marcus's experience or pursuant to a contingency fee
agreement.

## VII.   CONCLUSION

The evidence in this case is clear: Plaintiff was the prevailing party and the relief
ordered substantial.  Lawyers are not readily available in Kern County or Tehachapi, and
Plaintiff reasonably retained Andréa Marcus as counsel.  The court should consider the
customary billing rates of the attorney's community.  Plaintiff's counsel is uniquely
qualified based on specialization, skill and experience to charge her normal rates of
$475.00 per hour, until 2018, when her fees were raised to $500.00 per hour, for Ms.
Marcus, and $300.00 per hour for Mr. Kaeser, $275.00 for Ms. Gallagher, $250.00 for Ms.
Fierro.

Therefore, the Markham's pray for payment of their invoice submitted for the
administrative matter (Exhibit Q), and for fees and costs incurred herein (Exhibit R), for
a total of $81,154.12, minus any travel or appearance time deemed unnecessary for
disposition of this case for hearing on this motion.

///
///
///
///

Case No.: 1:16-cv-01942-DAD-JLT
DEFENDANT'S NOTICE OF AND MOTION FOR ATTORNEYS FEES

Dated: October 22, 2018                    Respectfully submitted,

Law Offices of Andréa Marcus

By: Andréa Marcus

Case No.: 1:16-cv-01942-DAD-JLT
DEFENDANT'S NOTICE OF AND MOTION FOR ATTORNEYS FEES

DECLARATION OF ANDRÉA MARCUS, IN SUPPORT OF THIS MOTION:

I, Andréa Marcus, declare under penalty of perjury, that the foregoing is of my own personal knowledge, and is true and correct.

Executed in Santa Barbara, California,        Respectfully submitted,

October 22, 2018

Law Offices of Andréa Marcus

By: Andréa Marcus

14

CERTIFICATE OF COMPLIANCE

      This is to certify that this document contains 3773 words (inclusive of Footnotes), excluding the caption, the certification of service and compliance, table of contents and Exhibits A-R, according to the word count of counsel's word processing program.

      I declare under penalty of perjury under the laws of the state of California that the forgoing is true and correct.

      Executed October 22, 2018, in Santa Barbara, California.


Respectfully submitted,


_____

Andréa Marcus

Case No.: 1:16-cv-01942-DAD-JLT

DEFENDANT'S NOTICE OF AND MOTION FOR ATTORNEYS FEES