EXHIBIT E - Case 1:18-cv-00303-LJO-JLT

1

2

3

4

5

6

7

8                                    **UNITED STATES DISTRICT COURT**

9                                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  ████  ████  and ████ ████          )  Case No.: 1:16-cv-01214 - JLT
                                        )
12              Plaintiffs,             )  ORDER GRANTING IN PART AND DENYING IN
                                        )  PART PLAINTIFFS' REQUEST FOR FEES AND
13       v.                             )  COSTS
                                        )
14  TEHACHAPI UNIFIED SCHOOL            )
    DISTRICT,                           )
15                                      )
                Defendant.              )
16  _____   )

17          ████  ████  and ████ ████     seek an award of attorney fees as a prevailing party in a due

18  process hearing under 20 U.S.C. 1415(i)(3) and California Education Code §56507.  (*See* Doc. 1;

19  Docs. 35-36)  Defendant Tehachapi Unified School District opposes the request, arguing the fees

20  requested are not reasonable.  (Doc. 37)  For the reasons set forth below, the motion for fees is

21  **GRANTED IN PART**.

22  **I.      Background**

23          Plaintiffs' son, A.W., "has autism and average cognition."  (Doc. 35 at 7)  A.W. "was initially

24  assessed for special education in March 27, 2012, while residing within the Jacksonville City Schools

25  District in Alabama."  (Doc. 1-1 at 3)  A private entity "conducted the assessment and recommended

26  that Student be found eligible for special education under the category of autism."  (*Id.*)

27          In January 2014, A.W.'s family moved to Tehachapi, California.  (Doc. 1-1 at 4)  A.W. attended

28  Cummings Valley Elementary School and was placed "in a kindergarten-first grade special day

class…with speech and language therapy twice per week for 20 minutes per session, and occupational therapy once weekly for 30 minutes." (*Id.*)  In addition, "[t]he class implemented behavior management strategies including behavior modification as part of the curriculum." (*Id.*)  According to Plaintiffs, A.W. "is capable of learning, but his autism manifests in behaviors which significantly impact he and his classmates." (Doc. 35 at 7)  While attending school, A.W. exhibited "eloping and aggressive behavior," and his "parents pulled him from school." (*Id.*)  A.W. last attended school on December 2, 2014, with the exception of returning one day in March 2015 for purposes of being observed by a psychologist retained by his parents. (Doc. 1-1 at 15)  His parents "sought legal help in getting appropriate behavior support using Applied Behavior Analysis ('ABA') methodology to address his behaviors so that A.W. would be safe at school." (Doc. 35 at 7)

On May 5, 2015, Ms. Marcus informed the District that she was representing A.W. and his parents. (*See* Doc. 37 at 28, 37)  In a letter dated May 9, 2015, the District made a "Confidential Letter of Settlement Pursuant to Rule 68 of the Federal Rules of Civil Procedure, Rule 998 of the California Code of Civil Procedure, Rule 408 Federal Rule of Evidence, California Evidence Code section 1152 and 20 United States Code section 1415(i)(3)(D)." (*Id.* at 28)  The District's offer included, but was not limited to, aide support, independent evaluations, and $11,000 in compensatory education. (*See id.* at 29-31)  Plaintiffs did not accept the offer and, instead, "filed a due process hearing request with the Office of Administrative Hearings on May 12, 2015." (Doc. 37 at 21; Doc. 1-1 at 1)

In a letter dated October 16, 2015, the District made another "Offer of Settlement," indicating the terms were "slightly revised from the May 9, 2015 letter." (Doc. 25 at 157)  The District offered to fund independent educational evaluations; compensatory education up to $11,000 through August 1, 2018; a functional behavioral analysis; have the teachers and aides assigned to A.W. receive Applied Behavior Analysis ("ABA") training regarding "techniques for students with autism; and hold an IEP meeting following the assessments. (*Id.*)  "Ms. Marcus responded in writing that her client accepted the offer." (Doc. 37 at 13, citation omitted)  However, hours later, Ms. Marcus sent another email, "stating that 'acceptance' was rescinded, 'until we have the opportunity to see the actual terms proposed in the agreement you write.'" (Doc. 39 at 3, citation omitted)  The District admits that at that time, the plaintiffs "made additional demands for attorney's fees as a contingency of his accepting the offering

and resolving the claims." (Doc. 37 at 13)

According to Plaintiffs, the District "refused to provide the Plaintiff with an Agreement in writing, and instead, filed a motion to dismiss the action from the Office of Administrative Hearings ("OAH") asserting the matter had been resolved." (Doc. 39 at, citation omitted)  In analyzing the motion, the ALJ relied exclusively on the requirements of California Rules of Civil Procedure section 998 and found,

> Rule 998 relates to a party offering to have the court enter a judgment against it in order to resolve pending litigation. The offer must include the terms and conditions of the judgment or award. If the 998 offer is accepted, it is then filed with the court clerk for entry of judgment. Here, the Tehachapi offer was not a complete offer as there were two contingencies. The first contingency was that Tehachapi's counsel was to prepare a settlement agreement which was to be signed by Student's parents. Thus, the offer did not contain the full terms and conditions of the offer. Secondly, the settlement was contingent upon acceptance of the written settlement agreement by the Tehachapi Unified School District Board of Trustees. Tehachapi's motion to dismiss states that there were "no other provisions that needed to occur for there to be binding agreement" As demonstrated above, this was not true as there were two contingencies which still were to be met. Thus, the terms of Rule 998 were not met, and there was not a contract entered as this was an offer subject to contingencies. Tehachapi's motion to dismiss is denied.

(Doc. 25 at 249)  The motion to dismiss was denied, and the matter proceeding to hearing on October 28, 2015.  (Doc. 39 at 3; Doc. 35 at 9)

The hearing officer issued a decision on December 31, 2015.  (Doc. 1 at 5)  The hearing officer determined that the District "denied Student a FAPE at the November 6, 2014 IEP team meeting when it failed to provide Student with appropriate behavior services and to offer a behavioral assessment." (Doc. 1-1 at 2)  In addition, the hearing officer found A.W. "missed 34 days of school as a direct result of Tehachapi's FAPE violation," and was "to 34 hours of individual instruction as compensatory education for the time [he] did not attend school due to parental safety concerns." (*Id.* at 29)  The hearing officer ordered:

1.   Within 10 school days of its receipt of this Decision, Tehachapi shall hold an IEP meeting to adopt an interim behavior plan.

2.   Within 21 days of Student returning to attend school, Tehachapi shall begin to conduct a functional behavior assessment pursuant to the February 24, 2015 Consent for Assessment. An IEP team meeting shall be held to review the functional behavior assessment within 45 days of the commencement of the functional behavior assessment.

///

3

3.       For all days that Student attends school, Tehachapi shall continue to provide Student with a one-to-one ABA-trained aide with supervision by a Board Certified Behavior Analyst for two hours per week, until the IEP team convenes an IEP meeting to review the functional behavior assessment and determines Student's behavior needs.

4.       Tehachapi shall provide Student with 34 hours of individual instruction as compensatory education by a certified special education teacher or certified non-public school or certified non-public agency after regular school hours. Student will have 12 months from receipt of this Decision to utilize the hours.

(*Id.* at 1-1 at 29-30)  Accordingly, the hearing officer concluded A.W. "prevailed in part" on the first issue presented, while the District also prevailed in part on the first issue, and prevailed in full on the remaining issues presented.  (*Id.* at 30)

On August 16, 2016, Plaintiffs initiated the action now before the Court by filing a complaint against the District, seeking "to recover reasonable attorneys' fees and expenses incurred in connection with an administrative proceeding under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*"  (Doc. 1 at 1-2)  The District filed its Answer to the complaint on September 13, 2016. (Doc. 4)

## II.       IDEA and Attorney Fees

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992) (citing *Honig v. Doe*, 484 U.S. 305, 310 (1988)). The IDEA ensures that "all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).  To provide a FAPE in compliance with the IDEA, an agency receiving federal funds must evaluate a student, determine whether that student is eligible for special education and services, conduct and implement an IEP, and determine an appropriate educational placement for the student. 20 U.S.C. § 1414.

The IDEA requires schools and educational agencies to involve parents in the formation, review, and revision of a child's IEP.  *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 208 (1982) ("Congress sought to protect individual children by providing for parental involvement in the development of state plans and polices… and in the

4

1  formulation of the child's individual educational program.").  If a parent disagrees with a school

2  district's proposals or plans for the child, the parent may challenge them by requesting an

3  administrative due process hearing.  *See* 20 U.S.C. § 1415(b)(6), (f)(1)(A).

4        If a parent proceeds to due process and is the prevailing party at the administrative hearing, a

5  district court may, "in its discretion . . . award reasonable attorneys' fees as part of the costs…to a

6  prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B).  The party's

7  success must result in a "material alteration of the legal relationship of the parties in a manner which

8  Congress sought to promote in the fee statute." *Texas State Teachers Assoc. v. Garland Independent*

9  *School District*, 489 U.S. 782, 792-93 (1989).  Consequently, a plaintiff cannot claim fees as a

10  prevailing party if "the plaintiff's success on a legal claim can be characterized as purely technical or

11  *de minimis*."  *Id.* at 792.  Further, there must be a causal link between the litigation brought and the

12  outcome gained. *See Johnson v. Bismarck Public School Dist.*, 949 F.2d 1000, 1003 (9th Cir. 1991)

13  (affirming the denial of fees where there was no causal relationship between the benefits given and the

14  filing of the due process complaint); *see also Robinson v. Ariyoshi*, 933 F.2d 781, 783 (9th Cir. 1991).

15  **III.    Discussion and Analysis**

16        **A.    Prevailing Party**

17        Under the IDEA, "[a] prevailing party for the purpose of awarding attorney's fees is a party

18  which 'succeeds on any significant issue in litigation which achieves *some of the benefit* the parties

19  sought in bringing the suit.'" *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1498

20  (9th Cir. 1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), emphasis added).

21        Here, it is undisputed that Plaintiffs are a "prevailing party" within the meaning of the Act.

22  (*See generally* Doc. 37 at 10-22)

23        **B.    Hourly Rate**

24        The IDEA instructs that a reasonable rate is the one "prevailing in the community in which the

25  action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C).

26  The hourly rate depends upon the "skill, reputation, and experience" of the attorney. *Chalmers v. City*

27  *of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986); *see also* 20 U.S.C. § 1415(i)(3)(F).  In general,

28  "the relevant community is the forum in which the district court sits." *Davis v. Mason County*, 927

F.2d 1473, 1488 (9th Cir. 1991).  However, the court may apply "rates from outside the forum… 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)).  Plaintiffs contend the Court should apply the hourly rate of practitioners in the Central District of California, where the Law Office of Andrea Marcus is located.  (*See* Doc. 35 at 21)

### 1.      Availability of local counsel

Plaintiffs contend that "was necessary for Plaintiffs to go outside their immediate community to obtain counsel with the specialized skills needed to handle cases under the IDEA."  (Doc. 35 at 17)  According to Plaintiffs, "Ms. Marcus was the only attorney available to [them], and the only one anyone in town knew of who did special education cases."  (Doc. 35-2 at 17)

Further, Plaintiffs file declarations from several individuals to support the conclusion that "there are no special education attorneys in Tehachapi or anyone similarly qualified in all of Kern County."  (Doc. 36 at 18, citing Exhs. 11, 13-15)  For example, Sahar Durali asserts that California Rural Legal Assistance, Inc., "has a practice of referring all special education intakes to private attorneys," but has found bar members in Kern County "do[] not take special education cases."  (Doc. 35-2 at 44-45, Durali Decl. ¶¶ 6, 8)  Ms. Durali reports that the officer "created a private attorney referral list for attorneys who have expressed willingness to take special education cases," yet found no local attorneys.  (*Id.* at 45, ¶ 8)

In addition, David Grey reports he has been practicing law since 1986 on "special education cases throughout the state," including "many cases in Kern County."  (Doc. 35-2 at 39-40, Exh. 12, Grey Decl. ¶¶ 1, 6)  Mr. Grey asserts that, to his knowledge, "There are no private attorneys who focus on representing disabled school children who reside" in Tehachapi and Kern County.  (*Id.* at 40, ¶ 7)  Accordingly, the Court finds Plaintiffs have met their burden of demonstrating local counsel working in the area of special education was not available.

Likewise, the Court finds that given the specific knowledge of special education law required to establish the reasonableness of the fees requested related to the tasks undertaken and the results achieved at the administrative hearing, it was appropriate for Plaintiffs to continue to be represented

by the Law Offices of Andrea Marcus in seeking a fee award from the District Court.

2.   Rates to be applied

Ms. Marcus requests an hourly rate of $475, asserting she "now has 19 years of experience as an attorney, and 17 years of exclusively special education experience." (Doc. 35 at 21)  Mr. Kaeser requests an hourly rate of $300, reporting he has "13 years of experience as an attorney, and nearly two[] practicing special education law." (*Id.*)  Plaintiffs also seek the hourly rate of $250 for Lyndsey Gallagher and Monique Fierro for work their work on the federal court action.[1] (*See* Doc. 31 at 7)

Plaintiffs have submitted declarations from attorneys who represent children with special education needs to support the requested hourly rates for Ms. Marcus and Mr. Kaeser.[2]  However, the information provided offers little assistance to the Court to determine the prevailing market rates in the Central District for attorneys with comparable skill and experience.

F. Richard Ruderman reports that he is "admitted in the Northern District, Eastern District, and in the Ninth Circuit Court of Appeals." (Doc. 35-2 at 22, Ruderman Decl. ¶ 2)  Mr. Ruderman reports he has his "own law firm in Sacramento and [has] been in private practice" since March 2016, and is "dedicated, almost exclusively, to representing parents of disabled children in special education due process and court proceedings." (*Id.* at 23, ¶ 8)  According to Mr. Ruderman, his "current billing rate is $550 per hour." (*Id.*, ¶ 10)  However, the billing rates for an attorney in practice in Sacramento are irrelevant for the Court's analysis herein.

Mr. Grey reports that he "confer[s] with other counsel about what they charge and what they are paid by school districts, including claims arising in Southern California, Northern California and Kern County," and monitors "fee awards issued in federal courts to counsel representing students in cases against their schools." (Doc. 35-2 at 41, Grey Decl. ¶ 11)  Accordingly, Mr. Grey asserts he is "in a position to know rates currently paid to attorneys who represent students in cases against their school districts." (*Id.*)  He concludes that the hourly rates of $300 and $475 requested are "very reasonable."

---

[1] Plaintiffs failed to provide any information regarding the admission dates or the level of experience of Lyndsey Gallagher and Monique Fierro.  However the Court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar." *Davis v. Hollins Law*, 25 F.Supp.3d 1292, 1298 n. 5 (2014).  Accordingly, the Court takes judicial notice of the admission dates of each of these attorneys as represented on the website of the State Bar of California. See id.; Fed. R. Evid. 201(b).

[2] Plaintiffs do not present evidence regarding the reasonableness of the requested hourly rate of $250 for Ms. Gallagher and Ms. Fierro.

1   (*Id.* at 42, ¶ 13)  However, Mr. Grey does not identify the sources of his information, cases he

2   reviewed, or whether the counsel with whom he conferred had comparable skills and experience as Ms.

3   Marcus or Mr. Kaeser.

4        Mark Woodsmall reports he has been admitted to practice since 1997, and has "been working

5   in special education law for 12 years."  (Doc. 35-2 at 19, Woodsmall Decl. ¶ 2)  Mr. Woodsmall

6   asserts that he is admitted to practice in the Central District and that his "billable rate is $425 per

7   hour."  (*Id.* at 19-20, ¶¶ 3, 7)  Although this is his current billable rate, Mr. Woodsmall does not assert

8   that he has received this rate from the Central District in any fee award.

9        Given the lack of evidence provided by Plaintiffs regarding the prevailing market rates in the

10  Central District for attorneys practicing special education law, the Court has conducted a review of

11  IDEA cases arising in the Central District.  *See, e.g., Beauchamp v. Anaheim Union High School Dist.*,

12  816 F.3d 1216, 1224-25 (9th Cir. 2016) (affirming the hourly rate of $400 for an attorney from the

13  Central District who had "been representing students in special education matters since 1996," where

14  the evidence included declarations by an attorney with "15 years of special education experience" who

15  said her hourly rate was "$350 to $425," and an attorney practicing since 1986 billed "a rate of $450

16  per hour for administrative work"); *C.B. ex rel. Baquerizo v. Garden Grove Unified Sch. Dist.*, 2012

17  WL 161806 at *3 (C.D. Cal. Jan. 18, 2012) (finding declarations submitted in the action affirmed the

18  prevailing hourly rate in the Los Angeles community was $350 to $525 for special education cases"

19  and awarding the hourly rate of for $400 for work done at the administrative level and before the

20  District Court); *Adams v. Compton Unified Sch. Dist.*, 2015 WL 12748005 at *10-11 (C.D. Cal. July

21  16, 2015) (awarding the hourly rate of $410 in an IDEA case to an attorney "been a lawyer for more

22  than twenty years" and specialized in special education for approximately thirteen years, and awarding

23  the rate of $390 to an attorney who worked "as a special education attorney for eleven… years"); *K.M.*

24  *ex rel. Bright v. Tustin Unified School District*, 78 F.Supp.3d. 1289, 1304 (C.D. Cal. 2015) (finding the

25  rate $475 per hour requested by David Grey to be reasonable, though there was no contest on this point

26  by the defendant).

27       The Court finds the experience of Ms. Marcus is comparable to that of counsel in *Beauchamp*.

28  Notably, Ms. Marcus seeks the same hourly rates as the court awarded Mr. Grey in *Bright*, though Mr.

Grey had been practicing law for nearly thirty years at that time, while Ms. Marcus has been practicing law now for nineteen years.  (*See* Doc. 35-2 at 38, ¶ 1; Doc. 35 at 21)  Accordingly, for purposes of the lodestar calculation below, the hourly rate will be reduced to $425 for Ms. Marcus.  In addition, when compared with the hourly rates billed by attorneys with significant experience in special education cases, who reported hourly rates ranging from $350 to $525, the rate for Mr. Kaeser, who has "nearly two" years of experience with special education law, will be reduced to $275.   Further, the Court will award the hourly rate of $175 to Ms. Gallagher and Ms. Fierro, who have been in practice for less than five years. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

### C.    Hours to be Awarded from the Administrative Proceeding

The District argues that "the Student was not substantially justified in rejecting the earliest settlement offer made in this case and that Ms. Marcus's bill should be reduced to reflect time spent until May 9, 2015."  (Doc. 37 at 22)  In the alternative, the District "asserts that because Ms. Marcus accepted on her client's behalf a settlement agreement on October 20, 2015 that her bill should be reduced to reflect the amount of time accrued to that date if this court finds that the Student was substantially justified in rejecting the earliest settlement offer made in this case."  (*Id.* at 22-23)

#### 1.    Challenges to the hours expended

As an initial matter, Plaintiffs contend that "Defendant waived any argument that the hours expended in the underlying matter were unreasonable by failing to assert that affirmative defense in its answer."  (Doc. 35 at 22)  On the other hand, the District asserts it "did not waive the issue of the reasonableness of the time spent by Plaintiff's counsel in its answer."  (Doc. 37 at 16)  Indeed, in the Answer, the District denied the allegation that Plaintiffs were entitled to "reasonable attorneys' fees and expenses not less than $140,000.00."  (*See* Doc. 4 at 3; Doc. 1 at 6, ¶ 13)

Regardless, the burden of proving that the hours claimed are reasonable lies with the fee applicant.  *Hensley v. Eckerhart,* 461 U.S. 424, 424 (1983)*; Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 945-46 (9th Cir. 2007).  Because the reasonableness of the fee is an element the plaintiff must prove, the failure to do so it is not an affirmative defense required to be plead by the defendant.

1   Fed. R. Civ. P. 8(c); *E.E.O.C. v. California Psychiatric Transitions, Inc.*, 725 F.Supp.2d 1100, 1118

2   (E.D.Cal. 2010) ("An affirmative defense is an assertion raising new facts and arguments that, if true,

3   will defeat plaintiff's claim, even if all allegations in complaint are true."); *Zivkovic v. S. California*

4   *Edison Co.*, 302 F.3d 1080, 1088 (9th Cir.2002) ("Edison's attempt to prove that it provided a

5   reasonable accommodation merely negates an element that Zivkovic was required to prove and

6   therefore was not an affirmative defense required to be pled in Edison's answer.").

7          On the other hand, in the answer the defendant specifically challenged the rate for fees.  (Doc.

8   4 at 3 ¶ 13)  The defendant also challenged whether the fees sought were reasonable in light of the

9   results obtained by the plaintiffs at the due process hearing.  *Id.* Admittedly, this statement is vague

10  but is broad enough to encompass a claim that the plaintiffs failed to achieve a better result at the due

11  process hearing than the District offered in its settlement proposals.  Accordingly, the Court finds

12  challenges to the hours requested by Plaintiff are not waived.

13              2.      Effect of the District's settlement offers

14         Under the IDEA, if a parent "protracts the litigation by rejecting a favorable offer, he risks

15  suffering a financial penalty."  *T.B ex rel. Brenneise v. San Diego Unified Sch. Dist*, 806 F.3d 451,

16  475-76 (9th Cir. 2015).  Specifically, the IDEA provides in relevant part:

17             Attorneys' fees may not be awarded and related costs may not be reimbursed in
               any action or proceeding under this section for services performed subsequent to the
18             time of a written offer of settlement to a parent if—

19             (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules
               of Civil Procedure or, in the case of an administrative proceeding, at any time more
20             than 10 days before the proceeding begins;

21             (II) the offer is not accepted within 10 days; and

22             (III) the court or administrative hearing officer finds that the relief finally
               obtained by the parents is not more favorable to the parents than the offer of settlement.
23

24  20 U.S.C. § 1415(i)(3)(D). An exception to this prohibition allows an award of fees and costs to be

25  "made to a parent who is the prevailing party and who was substantially justified in rejecting the

26  settlement offer."  20 U.S.C § 1415(i)(3)(E).

27         The District argues, "Student is not entitled to the award he seeks because Student failed to

28  obtain relief that was better than previously made settlement offers."  (Doc. 37 at 19, emphasis

1    omitted)  The District observes: "On May 9, 2015 and October 19, 2015, counsel for Tehachapi sent to

2    Student's counsel offers of settlement under 20 U.S.C. § 1415 offering to resolve the due process

3    complaint in exchange for programmatic and compensatory educational services. [Citation.] Student

4    did not accept any of the settlement offers that Tehachapi made and proceeded to due process."  (*Id.*,

5    citations omitted)  The District argues Plaintiffs were "unreasonable in protracting the litigation and

6    taking the matter to due process because Plaintiff[s] did not obtain a decision that provided more

7    favorable terms than what Tehachapi had earlier offered…"  (*Id.*)

8                                    *a.      Validity of the offers*

9           Plaintiffs contend the District's offer in October 2015"was not valid because it did not satisfy

10   the requirements of a "Rule 68 offer."  (Doc. 35 at 24)  Pursuant to Rule 68 of the Federal Rules of

11   Civil Procedure, "At least 14 days before the date set for trial, a party defending against a claim may

12   serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued."

13   Fed. R. Civ. P. 68(a).  In addition, Plaintiffs observe that "A Rule 68 offer must… be unconditional and

14   must include 'costs then accrued.'"  (*Id.*, quoting *Herrington v. County of Sonoma*, 12 F.3d 901, 907

15   (9th Cir. 1993); 12 Charles A. ███████ & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 3002

16   (1973).  Plaintiffs arguing the offer made by the District in October 2015 failed to satisfy these

17   requirements, observing:

18          As of October 16, 2015 (the date of the first Rule 68 letter)[3], Plaintiff's attorneys had
            spent 75.2 hours in preparing the matter for the anticipated due process hearing. These
19          fees are recoverable under the IDEA and are treated as costs for Rule 68 purposes. *E.C.
            v. Philadelphia School Dist.*, 644 Fed. Appx. 154, 155 (3rd Cir. 2016) (order awarding
20          fees for 115 hours preparing for due process hearing upheld); *see also, S.A. v. Patterson
            Joint Unif. School Dist.*, 2010 WL 3069204, slip op. at 8 (E.D. Cal. 2010); *M.C. v.
21          Seattle School Dist. No. 1*, 2005 WL 1111207, slip op. at 5 (W.D. Wash. 2005).

22   (Doc. 35 at 24)  Because the October "'Rule 68 offer' was utterly silent as to fees incurred to date,"

23   Plaintiffs contend it was not a valid Rule 68 offer.

24          Further, Plaintiffs observe that "an offer contingent on acceptance by a defendant's governing

25   body is, in reality, an invitation to plaintiff to make an offer and not a valid – binding – Rule 68 offer."

26   (Doc. 35 at 25, citing *Frazier v. Harris*, 218 F.R.D. 173, 174 (C.D. Ill. 2003); *accord, Marnell v.*

27

28          _____
            [3] The October 2015 letter was, in fact, the *second* letter containing a settlement offer from the District.  Indeed, the
            October 2015 offer refers to the May 2015 offer.  (*See* Doc. 25 at 157)

                                                        11

*Carbo*, 499 F. Supp. 2d 202, 207 (N.D.N.Y.2007)).  Because the District's offer "was contingent upon

acceptance of the written settlement agreement by the Tehachapi Unified School District Board of

Trustees," Plaintiffs contend the offer was "without legal effect" under Rule 68.  (Doc. 35 at 24)

        Significantly, courts have rejected Plaintiffs' arguments regarding the application of Rule 68

requirements to settlement offers made in IDEA actions.  As Defendant observes, this Court

determined that "[m]aking the settlement agreement contingent on approval from the elected board of

a public school does not operate or make the offer inoperative for the purposes of limiting fees under

the IDEA."  (Doc. 37 at 19, citing *J.C. v. Vacaville Unified Sch. Dist.*, 2007 WL 112138 at *4 (E.D.

Cal. Jan. 10, 2007).  Specifically, in *J.C.*, the plaintiff argued that settlement offer was invalid because

it was subject to "District Governing Board Approval."  *Id.* at *3.  In so arguing, J.C.—similar to

Plaintiffs here—"fail[ed] to cite to Ninth Circuit authority or IDEA case law from any Circuit to

support the argument that § 1415(i)(3)(D)(i) requires that the written settlement offer become effective

upon acceptance by plaintiff."  *Id.*  The Court observed:

> Plaintiff relies primarily upon a district court decision from the Central District of
> Illinois which held that a defendant's proposed offer is not a valid offer for the purposes
> of Rule 68 of the Federal Rules of Civil Procedure because the offer would only become
> binding with City Council approval. *Frazier v. Harris*, 218 F.R.D. 173 (C.D.Ill.2003).
> Unlike *Frazier*, this case arises under the IDEA, not Rule 68. While § 1415(i)(3)(D)(i)
> and Rule 68 may share a similar goal of promoting settlement, cases under the IDEA
> present different circumstances, such as settlement offers made by school districts,
> which receive state funding and are subject to various restrictions, as opposed to private
> settlement agreements that more often occur under Rule 68.

*J.C.*, 2007 WL 112138 at *3, n.7.  Because a requirement that an offer not be subject to approval by a

governing board "would likely ignore the practicalities presented by settlement offers made by *any*

school district" under the IDEA, the Court concluded the need for board approval does not invalidate a

settlement offer under § 1415(i)(3)(D)(i).  *Id.* at *3 (emphasis added).

        Likewise, the Southern District rejected a plaintiff's argument that a settlement offer was "void

because it did not meet all legal requirements for a valid Rule 68 offer."  *L.R. v. Hollister Sch. Dist.*,

2014 WL 1118019 at *3 (N.D. Cal. Mar. 19, 2014).  The court observed,

> Under the IDEA, a settlement offer must be "made within the time prescribed by Rule
> 68 of the Federal Rules of Civil Procedure." 20 U.S.C. § 1415(i)(3). By its own terms,
> the statute speaks only to the time frame provided by Rule 68; it does not prescribe that
> the settlement offer under the IDEA follow every other requirement applicable to Rule
> 68 settlement offers. That the District invoked Rule 68 in its Offer by writing that the
> "offer of settlement is made pursuant to 20 U.S.C. section 1415(i)(3)(D) and Rule

68"[citation] does not necessarily render the Offer susceptible to Rule 68's content requirements.

*Id.* at *3. Accordingly, the court found "the lack of a specific sum and the mention of a subsequent formal settlement agreement do not invalidate the District's Offer under the IDEA." *Id.* at *10. Rather, the court concluded "only the timing requirement of Rule 68" applied to settlement offers under the IDEA. *Id.*

Even still, when an offer is silent as to attorneys' fees, this does not make the offer insufficient for purposes of Rule 68. Instead, this reserves in the Court the authority to determine fees and costs after the entry of judgment. In *Marek v. Chesny*, 473 U.S. 1, 6 (1985), the Court held,

> If an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts the offer, the judgment will necessarily include costs; if the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of the Rule to include in its judgment an additional amount which in its discretion, see *Delta Air Lines, Inc. v. August, supra* 450 U.S., at 362, 365, 101 S.Ct., at 1153, 1156 (POWELL, J., concurring), it determines to be sufficient to cover the costs.

California law as to offers made under Code of Civil Procedure § 998 is similar. *Calvo Fisher & Jacob LLP v. Lujan,* 234 Cal.App.4th 608, 629 (2015) ("[W]hen a section 998 offer is silent as to costs and fees, contractual or statutory attorney fees are recoverable in addition to the amount of the accepted offer.").

In any event, because the IDEA incorporates only "the time prescribed by Rule 68 of the Federal Rules of Civil Procedure," the Court finds Plaintiffs' challenges to the validity of the settlement offer based upon the substantive requirements of Rule 68 are inapplicable. *See* 20 U.S.C. § 1415(i)(3)(D); *J.C.*, 2007 WL 112138 at *3, n.7; *L.R.*, 2014 WL 1118019 at *3.

### b.      Timing of the offers

As noted above, Plaintiffs contend the District made its first settlement offer in October 2015. (*See* Doc. 35 at 24)  Plaintiffs fail to address the offer made by the District in May 2015. Nevertheless, time records from Ms. Marcus clearly indicate an offer was received from the District in May 2015, and that she discussed the offer with Plaintiffs on May 10, 2015. (*See* Doc. 37 at 44)

It is indisputable that both the May 2015 and October 2015 offers were made "more than 10 days before the proceeding" began on October 28, 2015. The fact the May 2015 offer was made prior

to the filing of the due process complaint does not render the offer invalid for IDEA purposes.  *See*

*Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d 201, 208 (5th Cir. 2011) ("IDEA does *not*, however,

require a proceeding to have begun before a settlement offer can be made.  Instead… §1415(i)(3)(D)(i)

applies when 'the offer is made . . . in the case of an administrative proceeding, *at any time more than*

*10 days before the proceeding begins*'") (emphasis in original).  Thus, as the District contends, there

were two settlement offers made under 20 U.S.C. §1415.  While the parties disagree regarding

acceptance of the October 2015 offer, it is undisputed that Plaintiffs did not accept the May 2015 offer

within ten days.

> c.      *Whether the relief obtained was greater than the District offered*

In evaluating a request for fees under the IDEA after a settlement offer is made, the Court must

compare the relief obtained from the administrative hearing with the relief previously offered.  *See* 20

U.S.C. § 1415(i)(3)(D)(I).

The District argues that "the remedies that Student obtained through the due process hearing

were not better – even from the Parent's perspective – than what was previously offered by Tehachapi."

(Doc. 37 at 21)  The District observes: "In summation, the ALJ's decision awarded Student an

assessment, ABA aide support until the assessment was complete, and 36 hours of compensatory

education."  (*Id.*)  In contrast, the District notes its "May 9 offer included ABA aide support provided

by a non-public agency known as MAPPS (Multilevel Applications & Positive Behavior Supports),

independent evaluations, and substantial compensatory education."  (*Id.*)  Specifically, the District's

offer dated May 9, 2015 included, but was not limited to:

- To fund and or reimburse Independent Educational Evaluations (IEEs) in the areas of Psychoeducational, Speech and Language, Adapted Physical Education and Occupational Therapy Assessments, up to the amount of $8,000;

- To fund compensatory education for up to$ 8,000 to be provided in any educational area of the Parents' choosing, provided by a non-public agency ("NPA"), in any format up through and including August 1, 2018;

- To fund compensatory education in the area of Speech and Language Therapy for up to $3,000, provided by either a NPA or by a currently licensed Speech and Language Pathologist, in any format up through and including August 1, 2018;

- To have an aide assigned to A.W. from a non-public agency, until the teachers and aide(s) assigned to A.W. received twenty (20) hours of training in the implementation of Applied Behavior Analysis ("ABA") techniques for students with autism;

14

- To provide a Functional Behavioral Analysis ("FBA") by a Board Certified Behavior Analyst, followed by an IEP meeting within 60 calendar days;

- To hold an Individualized Education Program ("IEP") meeting following the FBA; and

- To conduct an Assistive Technology Assessment, and hold an IEP meeting following the assessment.

(*See* Doc. 37 at 29-30)  Defendant's counsel, Kyle Holmes, reports that "[d]epending on the area of need, … rates for compensatory education in Kern County range from $55 to $70 per hour."  (*Id.* at 25, Holmes Decl. ¶ 4)  Thus, the offered compensatory settlement totaled "between 157 to 200 hours of compensatory education based on prevailing Kern County rates."  (*Id.* at 21)

Indisputably, the compensatory hours offered by the District were far greater than those ordered, and Plaintiffs do not challenge the conclusions related to the compensatory hours.  However, at the hearing, Plaintiffs argued that a key distinction between the District's offer and the relief ordered was the provision for "one-to-one ABA-trained aide with supervision by a Board Certified Behavior Analyst."  Plaintiffs observed that while the District offered to train the teachers and aide assigned to A.W. with the ABA techniques, there was no offer to have the aide supervised by the Board-Certified Behavior Analyst.  Indeed, the District acknowledged at the hearing that the implementation of such supervision would be costly.  Further, the hearing officer directed actions to be taken in a much more immediate time-frame, such as directing the District to hold an IEP meeting within ten days of the decision "to adopt an interim behavior plan" and hold an IEP meeting following a functional behavior assessment within forty-five days, rather than the sixty days offered by the District.  (*Compare* Doc. 1-1 at 29-30 *with* Doc. 37 at 29-30)

Given the provision for a Board-Certified Behavior Analyst and the deadlines ordered by the hearing officer, the Court finds the District's offers of settlement were not more favorable to the parents than the relief ordered.  Accordingly, the settlement offers in May and October 2015 do not preclude the recovery of attorneys' fees.  *See* 20 U.S.C. § 1415(i)(3)(D).

### 3.    Acceptance of the October 2015 offer

In its opposition to the motion for fees, the District asserted Plaintiffs were not entitled to the fees requested because they "accepted an earlier settlement offer and unnecessarily protracted litigation

15

in refusing to endorse the final agreement which constituted a breach of contract." (Doc. 37 at 13, emphasis omitted).  The District reported:

> On or about October 16, 2015 counsel for Tehachapi sent to Ms. Marcus an offer of settlement and Ms. Marcus responded in writing that her client accepted the offer.  See AR Pgs. 147-163 & 241-244.  This offer of settlement was silent on the matter of attorney's fees.  Subsequently, a written settlement agreement was sent to Ms. Marcus for her client's endorsement.  Ms. Marcus responded by informing Tehachapi that her client rescinded his acceptance of the settlement offer and made additional demands for attorney's fees as a contingency of his accepting the offer and resolving the claims.  See [AR] Pgs 241-244.

(*Id.* at 13)  The District asserted, "In essence Plaintiff made a binding contractual promise to endorse a settlement agreement containing the terms and conditions communicated by email and thereafter breached that agreement by refusing to do so unless and until additional consideration was provided." (*Id.* at 14)

Notably, however, Ms. Marcus disputes the assertion that a written settlement agreement was provided for signature, and argues the District "refused to provide the Plaintiff with an Agreement in writing." (Doc. 39 at 3) Indeed, the citations in the opposition refer only to the arguments presented to the hearing officer and the order on the motion to dismiss.  There is no evidence identified in the record that a written settlement agreement was provided to Plaintiffs.  When questioned at the hearing, counsel for the District, Mr. Holmes, reported he was unaware whether a finalized document was, in fact, provided.   Mr. Holmes asserted he was informed this occurred, but was unable to locate emails to determine the written document was provided to Ms. Marcus.

Moreover, as the District acknowledges, Ms. Marcus responded that a provision for attorney's fees was necessary before the matter could be settled in its entirety.  (*See* Doc. 37 at 13)  At the hearing, Mr. Holmes conceded that Plaintiffs were substantially justified in rejecting a settlement offer not including attorney fees at that point in the administrative proceedings.  Therefore, the Court finds Plaintiffs did not unreasonably protract the litigation due to the lack of a fees provision in the October 2015 offer.

### 4.    Hours of work to be awarded

As discussed above, the party seeking the award of fees has the burden of proof to establish the fees requested are reasonable. *See Hensley*, 461 U.S. at 434, 437.  As a result, a "fee applicant bears

1    the burden of documenting the appropriate hours expended in the litigation, and must submit evidence

2    in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992).

3        The Court also has an independent duty to review the evidence to determine the reasonableness

4    of the hours requested in each case. *Hensley*, 461 U.S. at 433, 436-47. A court "may not uncritically

5    accept a fee request," but must review the time billed and determine whether it is reasonable in light of

6    the work performed and the context of the case. *See Common Cause v. Jones*, 235 F. Supp. 2d 1076,

7    1079 (C.D. Cal. 2002); *see also McGrath v. County of Nevada*, 67 F.3d 248, 254 n.5 (9th Cir. 1995) (a

8    court may not adopt representations regarding the reasonableness of time expended without reviewing

9    the record); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984) (remanding an action

10    for a thorough inquiry on the fee request where "the district court engaged in the 'regrettable practice'

11    of adopting the findings drafted by the prevailing party wholesale" and explaining a court should not

12    "accept[] uncritically [the] representations concerning the time expended").

13        Where documentation of the expended time is inadequate, the Court may reduce the requested

14    award. *Hensley*, 461 U.S., at 433, 436-47. Further, "hours that were not 'reasonably expended'" should

15    be excluded from an award, including "hours that are excessive, redundant, or otherwise unnecessary."

16    *Id.* at 434. A determination of the number of hours reasonably expended is within the Court's

17    discretion. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484-85 (9th Cir. 1988).

18               *a.*     *Evidentiary objection*

19        As an initial matter, the District objects to the billing hours submitted, asserting "there has been

20    no evidence introduced that the invoice was created contemporaneously with the work." (Doc. 37 at

21    21) However, Mr. Kaeser asserts that making a record of fees "was a regular practice of the activity of

22    the Law Offices of Andréa Marcus," and the record "was kept in the course of regularly conducted

23    activity." (Doc. 35-2 at 33, Kaeser Decl. ¶¶ 4-5) Similarly, Ms. Marcus reported that she

24    "contemporaneously kept track of [her] billable time." (Doc. 35-2 at 54, Marcus Decl. ¶10) In addition,

25    Ms. Marcus asserted: "The entries accurately reflect the work that I personally performed, and the work

26    that Mr. Kaeser performed, and the amount of time it took to do the work." (*Id.*, ¶ 12)

27        Accordingly, the Court finds the information provided by Mr. Kaeser and Ms. Marcus is

28    sufficient to demonstrate the log of hours was created contemporaneously with the tasks completed, and

1   the District's evidentiary objection is **OVERRULED**.

2                    *b.        Reasonableness of the time expended*

3          The District makes several objections to the number of hours reported by Plaintiffs' counsel in

4   this action.  (*See* Doc. 37 at 14-15, 17-19)  Specifically, the District asserts Plaintiffs should not be

5   awarded hours for representation by both Andréa Marcus and Kelly Kaeser at the hearing, or for

6   duplicative tasks by the attorneys.  (*Id.* at 14-15, 17)  The District also contends the hours were not

7   reasonable and should be reduced to reflect the fact that A.W. "only partially prevailed on a fraction of

8   his claims… and obtained only a limited form of relief under the IDEA."  (*Id.* at 18, emphasis omitted)

9                    *i.        Time prior to the filing of the due process complaint*

10         At the hearing, the District asserted Plaintiffs were not entitled to attorney fees that accrued

11  prior to the filing of the due process complaint or during the resolution period.  After a due process

12  complaint is filed, but before a hearing may be held, the IDEA mandates a resolution period of thirty

13  days, during which certain activities for the purpose of resolving the claims must take place.  *See* 20

14  U.S.C. § 1415(f)(1)(B).  Congress intended this resolution period give a school district "a chance to

15  resolve [the problems] in a less formal manner before having to spend the time and resources for a due

16  process hearing."  S. REP. No. 108-185, at 39 (2003).

17         The District offered no authority to support the assertion that fees may not be awarded for work

18  completed prior to the filing of the due process complaint or during the resolution period.  Previously,

19  this Court rejected a similar argument from a school district, which asserted the plaintiffs "should not

20  be able to recover for time spent prior to the due complaint being filed."  *J.A.A.H. v. Modesto City*

21  *Schools*, 2009 WL 55951 at *8 (E.D. Cal. Jan. 6, 2009).  Rather, the Court determined it was

22  appropriate for Plaintiffs to recover fees "from the start of their engagement" of counsel.  *Id.* (citing,

23  *e.g., S.J. v. Essaquah School District No*. 411, 2008 WL 11342 (W.D.Wash. January 8, 2008) (finding

24  claimed hours from the start of engagement reasonable]; *P.N. v. Seattle School Dist. No. 1*, 474 F.3d

25  1165, 1169 (9th Cir.2007) ("the IDEA authorizes an action solely to recover attorneys' fees and costs,

26  even if there has been no administrative or judicial proceeding to enforce a student's rights under the

27  IDEA").

28         Likewise, other district courts have determined time expended prior to the filing of a due

process complaint may be recovered under the IDEA.  *See, e.g., Cook v. District of Columbia*, 115 F. Supp. 3d 98, 104 (D.C. Dist. 2015); *E.C. & C.O. v. Sch. Dist. of Phila.*, 91 F. Supp. 3d 598, 607 (E.D. Penn. 2015).  In *Cook*, the school district argued the IDEA restricted fee awards "to include only the time between the filing of a request for an administrative hearing and the issuance of the administrative decision." *Cook*, 115 F. Supp. 3d at 104.  The Court rejected this argument, explaining that "[s]o long as there is a meaningful relationship between the hours billed and the administrative proceeding…, the hours are reasonable and attorney's fees may be awarded." *Id.* at 105.  Indeed, it seems unjust that counsel would not be able to recover fees for work completed prior to the filing of a due process complaint when the work relates to the issues presented and would, indisputably, be compensable after the filing.  Therefore, the Court finds Plaintiffs may recover fees for work completed prior to the filing of the due process complaint and during the resolution period, provided the tasks were related to the administrative proceeding.

The Court has conducted a careful review of the time sheets provided by Ms. Marcus, and finds the tasks completed prior to the filing of the due process complaint on May 12, 2015, as well as during the resolution period, relate to the issues presented in the due process complaint and argued at the administrative hearing.  Accordingly, Plaintiffs are entitled to recover fees for the tasks undertaken by counsel during this time period.

### ii. Representation by more than one attorney

The District asserts the time expended by Kelly Kaeser in the action was not necessary, asserting "the complexity of this case did not warrant two counsel appearing on behalf of Student." (Doc. 37 at 15)  The District observes that the hearing "took place over the course of 5 hearing days," during which A.W. was represented by both Ms. Marcus and Mr. Kaeser, while the District "only required the assistance of one counsel - Darren Bogié." (*Id.*)  Further, the District notes, "During the entire hearing Mr. Kaeser only questioned one witness - Ms. ███ ███████ (*Id.*)  Consequently, the District concludes that Plaintiffs "should not be entitled to double bill for both Ms. Marcus' time and Mr. Kaeser's, as it was unnecessary for Student to have two counsel present for the duration of the hearing." (*Id.*)

Notably, the District's argument that two attorneys are unnecessary is undercut by the fact that

19

the District was represented by two attorneys at a hearing on a subsequent action between A.W. and the District.[4]  (*See* Doc. 44-1 at 2)  At that time, A.W. was again represented by Ms. Marcus and Mr. Kaeser, while the District was represented by Mr. Bogié and Stephanie Virrey Gutcher. (*Id.*) Moreover, the Ninth Circuit has "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)).  Therefore, a total deduction of all time expended by an additional attorney would be inappropriate.

On the other hand, in general, two attorneys cannot bill for communicating with each other, as such time is unnecessary.  *In re Mullins*, 84 F.3d 459, 467 (D.C. Cir. 1996); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1099 (D. Haw. 2010).  As a result, "many courts have ... reduced fee awards for time spent in 'interoffice conferences' or other internal communications."  *Gauchat-Hargis v. Forest River, Inc.*, 2013 WL 4828594 at *3 (E.D. Cal. Sept. 9, 2013) (citing, *e.g., Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1194 (S.D. Cal. 2003) (reducing selected time entries because attorneys "billed an inordinate amount of time for interoffice conferences"); *Coles v. City of Oakland*, 2007 WL 39304, at *10 (N.D. Cal. Jan.4, 2007) (hours claimed for "communication between attorneys may indicate unreasonable overstaffing such that a reduction in hours is appropriate"); *Gibson v. City of Chicago*, 873 F.Supp.2d 975, 987 (N.D.Ill.2012) (eliminating time entries for duplicative tasks)).

Here, many billing entries that indicate time spent on interoffice consultations.  For example the following entries include "strategy" consultations or meetings between Ms. Marcus and Mr. Kaeser:

| Date | Attorney | Task | Time |
|------|----------|------|------|
| 11/1/2015 | Marcus | Hearing Preparation: consult wKelly (sic) re witness prep | 0.1 |
| 11/1/2015 | Kaeser | Hearing Preparation: Consult AM- Witness List | 0.1 |
| 11/2/2015 | Kaeser | Receipt and Review of Correspondence: Strategy Consult w/ Andrea re same | 0.1 |
| 11/3/2015 | Marcus | Hearing: Due Process hearing all day *with evidence review in am w/Kelly (sic)* and post-hearing re-cap with client | 13.4 |
| 11/3/2015 | Kaeser | Hearing Preparation: Meet with AM hearing Prep | 0.7 |

---

[4] The District requested that the Court take judicial notice of the decision issued in OAH Case No. 2015050839. (Doc. 44)  The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Accordingly, the Court "may take judicial notice of 'records and reports of administrative bodies.'" *Mack v. South Bay Beer Dist.*, 709 F.2d 1279,  1282 (9th Cir. 1986 (quoting *Interstate Natural Gas Co. v. Southern California Gas Co*., 209 F.2d 380, 385 (9th Cir. 1953)).  Because the accuracy of the records and order from the administrative proceeding cannot reasonably be questioned, the District's request for judicial notice is **GRANTED**.

20

| 11/4/2015 | Marcus | Hearing Preparation: meet and confer re briefing schedule | 0.1 |
| 11/4/2015 | Kaeser | Hearing Preparation: Strategy Consult w/AM Brief Schedule & consult w/Andrea re same | 0.1 |
| 11/4/2015 | Kaeser | Hearing Preparation: Meet with AM Hearing Prep/Rev | 0.8 |
| 11/30/2015 | Kaeser | Strategy Consult: remaining witnesses *& consult w/Andrea re same* | 0.2 |
| 12/8/2015 | Marcus | Inter-office Strategy Consult: correspondence w Kaeser re ▓▓▓▓ evidence in preparation for tort claim argument | 0.1 |

(Doc. 37 at 58-61, emphasis added)

Given Mr. Kaeser's status as the junior attorney and limited experience with special education law, the consultations were likely needed for guidance by Ms. Marcus.  This Court previously found "[t]ime billed by junior associates is not 'reasonably expended' where it serves as training rather than productive legal work, and courts are justified in eliminating 'hours not necessary in light of the experience of the attorney.'"  *Gauchat-Hargis*, 2013 2013 WL 4828594 at *3 (quoting *Ward v. Tipton Cnty. Sheriff Dep't*, 937 F.Supp. 791, 801 (S.D. Ind. 1996)).  Therefore, based upon the billing records above, the Court finds a deduction of 2.0 hours for Mr. Kaeser is appropriate.

### iii.   Clerical tasks

In general time expended by counsel on clerical tasks such as "filing, transcript, and document organization time" should not be awarded.  *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009); *see also Harris v. L & L Wings, Inc.,* 132 F.3d 978, 985 (4th Cir. 1997) (approving the elimination of hours spent on clerical tasks from the lodestar calculation); *Jones v. Metropolitan Life* Ins. Co., 845 F. Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court documents or copying").

The time sheets reveal many entries for purely clerical tasks, such as compiling documents for an exhibit binder and creating tables of contents.  Courts have determined these tasks are clerical in nature, and time expended should not be awarded.  *See, e.g., L.H. v. Schwarzenegger*, 645 F. Supp. 2d 888, 899 (E.D. Cal. 2009) (finding organizing documents appeared clerical, and declining to award fees where the applicant "tendered no evidence that these are tasks that required the skill of a paralegal"); *Cappucio v. Pepperdine Univ.*, 2014 WL 12573366 at *5 (C.D. Cal. Sept. 17, 2014) ("No reasonable client would pay attorneys' fees (let alone for 1.5 hours) for drafting a table of contents, a task that can be completed in minutes through relatively mundane word processing commands. This is a clerical task

at best."); *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 2014 U.S. Dist. LEXIS 185304 at *37 (D. Haw. Dec. 29, 2014) ("Work completed on a table of contents/table of authorities is clerical").  Given the clerical nature of these tasks, the following time will be deducted:

| Date | Attorney | Task | Time |
|------|----------|------|------|
| 10/20/2015 | Marcus | Drafted revised A. ███ Table of Contents | 0.8 |
| 10/26/2015 | Marcus | Compiled hard and electronic copy of Evidence binders | 6.9 |
| 10/27/2015 | Marcus | Final Evidence Binder with addition of Gilbertson report, CV, IEE request, and OCR'd for hearing & completed hard-copies w/TOC | 1.8 |

(Doc. 37 at 54, 56)  This results in a total deduction of 9.5 hours of time for Ms. Marcus.

*iv.   Block-billing*

The billing records include several entries of "block billing," where the timekeeping format "bundles tasks in a block of time."  *See Aranda v. Astrue*, 2011 U.S. Dist. LEXIS 63667 at *13 (D. Ore. June 8, 2011).  As the Ninth Circuit observed, "block billing makes it more difficult to determine how much time was spent on particular activities." *Welch v. Metro. Life Ins.*, 480 F.3d 942, 948 (9th Cir. 2007).  Consequently, where attorneys present time expended in "blocks," the Court may "simply reduce[] the fee to a reasonable amount." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000); *see also Welch*, 480 F.3d at 948 ("We do not quarrel with the district court's authority to reduce hours that are billed in block format").  A district court may "impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion" for block billing.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

The use of block billing makes it difficult for the Court to determine how much time was expended on certain tasks.  This is additionally troublesome as entries include clerical tasks, for which fees should not be awarded.  For example, on May 12, 2015, Ms. Marcus indicated that in 3.1 hours she "Finalized [the] Due Process Complaint & filed with OAH and OC and Client."  (Doc. 37 at 44)  On May 25, 2015, Ms. Marcus "reviewed and calendared [the] OAH Scheduling Order[;] notified witnesses and client of dates."  (*Id.* at 45)  While time spent finalizing the draft of a document and talking with the clients is clearly compensable, time filing the document and calendaring deadlines is not.  Given the block-billing format of the entries, however, the Court is unable to ascertain the amount of time Ms. Marcus spent on compensable tasks, or whether the time expended on compensable tasks

22

1    was, in fact, reasonable.  Consequently, the Court exercises its discretion to reduce the time billed by

2    Ms. Marcus by 10% for work completed at the administrative level.  *See Moreno*, 534 F.3d at 1112.

3                            v.      *Tasks not related to the administrative proceeding*

4            Significantly, there are billing entries in December 2015 and beyond that do not relate to the

5    administrative proceeding at issue, and instead relate to the preparation of a tort claim and an related

6    proceeding between A.W. and the District for the District's alleged failure to comply with the order of

7    the hearing officer.[5]  (*See* Doc. 37 at 61-65)

8            On the other hand, the Court declines to deduct *all* time incurred after the order issued on

9    December 22, 2015, as proposed by the District.  A review of the billing records indicates several tasks

10   related to the administrative matter now before the Court, including explaining the decision to the

11   clients, an "appeal consult" and "preparation for determining whether to appeal" in January 2016.  (*See*

12   Doc. 37 at 62)  However, tasks related to the tort claim and the District's compliance with the order not

13   relate to the IDEA administrative proceeding now before the Court should not be included in the

14   lodestar calculation.  *See Gauchat-Hargis v. Forest River, Inc.*, 2013 U.S. Dist. LEXIS 128508 at *11

15   (E.D. Cal. Sept. 9, 2013) ("Time spent on tasks that are not relevant to the case at issue should be

16   eliminated from the lodestar analysis.").  This results in a deduction of 21.4 hours, which includes 5.6

17   hours for Ms. Marcus and 15.8 hours for Mr. Kaeser.[6]

18                            5.      Lodestar Calculation

19           The Ninth Circuit utilizes the "lodestar" method to compute reasonable attorneys' fees, which

20   represents the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Ferland v.*

21   *Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citations omitted).  No upward

22   adjustment may be made to the lodestar amount under the IDEA.  *See* 20 U.S.C. § 1415(i)(3)(C) ("No

23   bonus or multiplier may be used in calculating the fees awarded under this subsection").

24           With the deductions set forth above, the number of hours to be awarded for Ms. Marcus is

25   reduced to 181.5 and the total for Mr. Kaeser is reduced to 83.7 hours. The Court finds this amount to

26

27

28   _____

     [5] Notably, at the hearing Ms. Marcus acknowledged the second proceeding was a "subsequent case."
     [6] Mr. Kaeser billed 4.0 of these hours at the reduced rate of $150 per hour.  (*See* Doc. 37 at 63)

                                                      23

be reasonable in light of the tasks undertaken and results achieved at the administrative hearing.[7]  This

results in a total fee award of **$99,330.00**.[8]  *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th

Cir. 2013) (finding the lodestar calculation yields a "presumptively reasonable fee" amount).

### D.      Hours for work before the District Court

Plaintiffs request an award of fees for work in the action before the federal court, reporting that

to date they have incurred $52,804.70 in fees.[9]  (*See* Doc. 39-1 at 1)

#### 1.      Evidentiary objection

As an initial matter, the District again objects to the submission of the billing records, asserting

that Plaintiffs "failed to submit any evidence that the invoices before this Court are accurate or that the

bills were generated contemporaneously with the work."  (Doc. 43 at 5)  However, previously both

Mr. Kaeser and Ms. Marcus reported that making a record of fees "was a regular practice… of the

Law Offices of Andréa Marcus" and they "contemporaneously kept track of … billable time." (*See*

Doc. 36-2 at 33, 54; Kaeser Decl. ¶¶ 4-5; Marcus Decl. ¶ 10)  Accordingly, the Court will consider the

billing records.

#### 2.      Hours to be Awarded

As noted above, the Court "may not uncritically accept a fee request," but must review the time

billed to determine whether it is reasonable.  *See Common Cause*, 235 F. Supp. 2d at 1079.  The

records reveal the fees request is flawed due to the inclusion of clerical tasks and overbilling.

##### a.      Clerical tasks

Plaintiffs' counsel seek fees for tasks such as filing, scheduling, contacting Court staff, and

gathering documents.  (*See generally* Doc. 39-1 at 1-7)  However, such tasks are clerical in nature and

should not be included in the lodestar calculation.  *See, e.g., Jones v. Metropolitan Life Ins. Co.*, 845 F.

Supp. 2d 1016, 1027 (N.D. Cal. 2012) (discounting time for "filing or retrieving electronic court

---

[7] The Court declines to reduce the amount further, as the District suggests, for limited success at the hearing as the time records clearly indicate the claims presented at the administrative hearing were intertwined, and the relief obtained was significant.  *See LR v. Hollister School Dist., Hollister School Dist.*, 2014 WL 1118019 at *6 (N.D. Cal. 2014)

[8] This amount includes $77,137.50 for Ms. Marcus (at the hourly rate of $425), and $22,192.50 for Mr. Kaeser, whose hours included 77.1 hours at the adjusted rate of $275, and 6.6 hours at the previously billed rate of $150.

[9] Plaintiffs initially failed to produce any evidence supporting the request with the motion, instead filing the time records with the reply brief.  As a result, the District was given an opportunity to file a supplemental brief addressing the billing records.  (*See* Doc. 43)  To the extent the District addressed billing records from the administrative action in its supplemental brief, the Court declines to consider the objections.  Herein, the Court addresses only the arguments presented regarding the billing for the federal court action.

1   documents or copying"); *see also Westberry v. Commonwealth Fin. Sys. Inc.*, 2013 WL 435948, at *3

2   (D.N.J. Feb. 4, 2013) (identifying calendaring deadlines, contacting the court clerk, and copying as

3   clerical tasks).  Accordingly, the following tasks should be deducted from the lodestar calculation due

4   to the clerical nature:

| Date | Attorney | Task | Time |
|------|----------|------|------|
| 8/25/2016 | Marcus | Compiled docs for service and direction re: same | 0.4 |
| 10/2/2016 | Marcus | Filed consent to magistrate [judge] | 0.3 |
| 10/18/2016 | Kaeser | Call scheduled | 0.1 |
| 11/8/2016 | Marcus | Consult re notice of errata [and] call to court to indicate court call | 0.1 |
| 11/8/2016 | Kaeser | Briefing Joint Scheduling Report- Sent to Judge JLT | 0.2 |
| 11/10/2016 | Kaeser | Telephonic Prehearing Conference Prep- Procedures with Susan Hall | 0.2 |
| 11/11/2016 | Kaeser | File Court Call confirmation with Judge Thurston[10] | 0.1 |
| 1/4/2017 | Gallagher | T/c with judicial clerk in eastern district regarding Thurston orders and VDRP process | 0.2 |
| 1/17/2017 | Gallagher | T/c with Thurston's clerk S. Hall regarding options for VDRP and magistrate selection | 0.1 |
| 1/30/2017 | Marcus | Message to court re status of motion for magistrate after checking in re status of motion | 0.2 |
| 1/31/2017 | Kaeser | Calendaring: ■■■ | 0.7 |
| 2/1/2017 | Gallagher | Correspondence with S. Hall regarding Stip/Order for Settlement Conference | 0.1 |
| 2/17/2017 | Kaeser | Filing Confidential Settlement Statement[11] | 0.3 |
| 3/15/2017 | Marcus | Filed and emailed joint status report | 0.5 |
| 3/23/2017 | Marcus | Review, consult, and calendar scheduling order | 0.2 |
| 4/3/2017 | Fierro | Review and calendar ■■■ Fees Fed Court Deadlines | 0.5 |
| 4/3/2017 | Marcus | Filed AR under seal | 1.3 |
| 4/4/2017 | Marcus | Began to compile AR for filing courtesy copy with Court… | 1.2 |
| 4/6/2017 | Marcus | Compiled and sent courtesy copy to LJO's chambers | 1.6 |
| 4/20/2017 | Marcus | Disassociation of counsel filed | 0.7 |
| 4/21/2017 | Marcus | Invoice for court call appearance | 0.1 |
| 5/3/2017 | Marcus | Prepared courtesy copy for [Judge] Thurston and sent to chambers | 0.9 |
| 6/14/2017 | Marcus | Filed stipulation and prop. order re settlement conference | 0.7 |

23   (*See* Doc. 39-1 at 1-8)  This results in a deduction of 10.7 hours, including 8.2 hours for Ms. Marcus,

24   1.6 hours for Mr. Kaeser, 0.4 hours for Ms. Gallagher, and 0.5 hours for Ms. Fierro.

25   *///*

---

27   [10] Notably, this was not a document that was filed with the Court. Presumably, Mr. Kaeser was referring to the fact that he e-mailed the confirmation to the Court.

28   [11] The Confidential Settlement Statements of the parties were not filed with the Court. Again, presumably, Mr. Kaeser is referring to e-mailing the document to the Court, and then filing the Notice of Lodging.  (*See* Doc. 14)

b.      *Block-billing and overbilling*

As with the hours submitted for the administrative proceeding, the time sheets for the action before the federal court include many blocks of entries, with both compensable and clerical tasks. For example, Ms. Marcus reports that on August 16, 2016, the spent 4.7 hours for "Drafting *and filing* of Compliant, Civil Cover Sheet, Summons, Request for Waiver of [Service] of Summons, and Notice of Interested parties, shared with Mr. Ferrell via email & consult re same." (Doc. 39-1 at 1)  The Court is unable to determine how much time was spent for drafting these documents compared to the filing, particularly in light of the fact that "filing" entries for Ms. Marcus range in time from 0.3 to 1.3 hours. Likewise, other entries by Ms. Marcus include a mixture of clerical tasks and attorney tasks—such as calendaring deadlines and client communications, and finalizing a document and servicing the documents— and the Court is unable to determine the reasonableness of the time expended on the non-clerical tasks.  (*See id.* at 4)

Finally, the Court's review of the time sheets provided for the federal court litigation causes serious concerns regarding overbilling for many tasks.  For example, the Court cannot find it was reasonable for Ms. Marcus to bill 1.3 hours to participate in the scheduling conference and review the scheduling order on November 15, 2016, where the conference took only 15 minutes and the order issued by the Court was less than one full page of text.[12]  (*See* Doc. 9 at 2)  Likewise, it was unreasonable to bill 0.3 hour to review the form filed by the District indicating its willingness to consent to magistrate judge jurisdiction, when the consent document is a single checklist form.  (*See* Doc. 21)  At most, the time expended on this task should have been 0.1 hour—and there is no chance that it would take six minutes to review this document.

Given the block billing and overbilling that occurred in some of the billing entries, the Court exercises its discretion to reduce her time by 10% for work completed at the federal court level.  *See Moreno*, 534 F.3d at 1112.

### 3.      Lodestar Calculation

With the hourly rates and time adjustments set forth above, the time expended related to the federal court action totals 105.3 hours.  This includes 76.9 hours by Ms. Marcus, 24.6 hours by Mr.

---

[12] The Court's records indicate the scheduling conference began at 8:57 a.m. and ended at 9:12 a.m.

Kaeser, 2.4 hours by Ms. Gallegher, and 1.4 hours by Ms. Fierro.  Accordingly, the lodestar amount totals $**39,087.50**.[13]  The Court finds this amount to be reasonable in light of the tasks undertaken by counsel in this action.

      **E.**       **Costs**

      Plaintiffs seek an award of $1,850 for costs related to the administrative matter.  (Doc. 35 at 26; Doc. 37 at 65)  This amount represents the "Per diem, per attorney charge for food and lodging, as per the IRS business rate, in the amount of $925.00 each for five days."  (Doc. 35 at 26)  Defendant does not dispute this request.   Accordingly, Plaintiffs' request for costs in the amount of $1,850.00 is **GRANTED**.

      In addition, Plaintiffs seek an award of costs in the amount of $1,059.70 related to the federal court proceedings.  (Doc. 35 at 26; Doc. 39-1 at 8)  This includes the filing fee, mailing costs, the per diem pay for Ms. Marcus to attend the hearing, and CourtCall appearance costs, which are all recoverable expenses for the litigation.   However, Plaintiffs also seek costs for a transcript from the bench trial held in a related action.  (*See* Doc. 39-1 at 8)  Plaintiffs fail to explain why the costs incurred in a related action should be borne by the defendant in this action. Accordingly, the request for the transcript costs in the amount of $412.25 is denied, and Plaintiffs are entitled to litigation costs in the amount of $**647.45**.

**IV.**     **Conclusion and Order**

      Based upon the foregoing, the Court **ORDERS**:

      1.       Plaintiff's request for attorneys' fees related to the administrative proceedings is **GRANTED** in the modified amount of $**99,330.00**;

      2.       Plaintiffs' request for costs related to the administrative proceedings is **GRANTED** in the amount of $**1,580.00**;

      3.       Plaintiffs' request for attorneys' fees related to the proceedings before the District Court is **GRANTED** in the modified amount of $**39,087.50**; and

      4.       Plaintiffs' request for litigation expenses before the District Court is **GRANTED** in the

---

[13] This amount includes $32,682.50 for Ms. Marcus; $5,740 for Mr. Kaeser (including 16.5 hours at the rate of $275 and 8.2 hours at the originally billed rate of $150); $420 for Ms. Gallagher; and $245 for Ms. Fierro.

modified amount of **647.45**.

IT IS SO ORDERED.

Dated:   **August 4, 2017**                              **/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE