I, Jose Padilla, declare as follows:

1. I am a member in good standing of the State Bar of California, and have so been since my admission in 1979.

2. I have been the Executive Director for California Rural Legal Assistance Inc., a state wide non-profit legal aid organization, since 1984. Established in 1966, CRLA meets its mission by serving low-income individuals residing in over 26 rural California counties. In 2015 CRLA's 19 field offices handled 5,968 cases. In addition, CRLA served 7,018 persons through a series of legal clinics on housing, wage/employment and health consumer programs, and reached another 48,939 individuals through community educational workshops focusing on the same legal issues. CRLA also referred another 5,384 individuals for further legal assistance to the private bar. All CRLA clients are low-income individuals who fall under the Federal poverty levels determined by the Department of Health and Human Services.

3. The need for civil legal assistance in general among low-income Californians far exceeds the current level of resources provided by government, private foundations, private charities, and other sources. There are approximately 22 legal aid programs serving Los Angeles County and approximately 13 for the City and County of San Francisco, yet, there are still not enough resources to provide assistance to eligible urban clients. Due to the resource limitations endemic to rural low-income, rural communities, the rural poor's need for legal assistance is particularly pronounced in the areas CRLA serves. According to the California Commission on Access to Justice's 2010 report, "Improving Civil Justice in Rural California," urban and rural disparities in legal aid funding per poor person are extreme. In California's 28 rural counties, the mean annual total funding by county is $18.56 per poor person, compared to $44.83 per poor person in the seven urban counties of the state, a ratio of nearly 2.5 times

DECLARATION OF JOSE PADILLA - 1

more funding for urban legal services. This resource discrepancy is particularly glaring because providing legal services in rural areas is actually more costly per person, with no economies of scale and long distances between clients and offices. With resources so scarce, CRLA has struggled to find private attorney advocates both willing and dedicated to representing low-income community members pro bono.

4. The private bar in CRLA's service areas often lack an understanding of the legal challenges low-income communities face, lack experience and expertise in the areas of substantive law commonly faced by the rural poor, and/or lack the "insight/recognition" of client needs necessary to competently represent low-income communities. Additionally the rural private bar frequently serve the interests of the many individuals and entities that are the primary causal factors of many of our client's problems and thus it is exceedingly difficult to place our clients' cases with local attorneys. Even where members of the local private bar have come to recognize the legal services gap our clients face, the firms are often too small to donate their time. The profit margins for practicing law in rural areas are too slim. Additionally, the local private bar in small rural communities is frequently conflicted out.

5. The California Commission on Access to Justice's 2010 report notes the following regarding the service gap in rural California: "Urban legal aid work is supplemented by extensive pro bono efforts by private attorneys and other supporters that help to fill the representation gap. Rural legal aid offices have fewer local resources from which to draw. There are no large law firms (which could be a source of pro bono services), fewer law schools, fewer corporate headquarters, and fewer foundations. 'Large firms' in the Central Valley, for example, have 20 attorneys, rather than the hundreds of attorneys found in large urban law firms. Some rural areas have no lawyers, or lawyers with a limited range of experience and

DECLARATION OF JOSE PADILLA - 2

expertise. Thirty percent of rural attorneys are government lawyers, and they are often precluded from doing pro bono work. Surveys show that rural solo attorneys already do some low fee work and provide free legal services to low and moderate income people. The few corporate headquarters in rural areas often involve an industry that may be at odds with legal services clients, and the small number of foundations means that fewer local charitable dollars from corporations or foundations are available for legal aid." (See Exhibit A to Jose Padilla Declaration).

6.  Because of the unavailability of local attorneys, we search statewide for attorneys with the expertise and desire to serve our rural clients. Many of these attorneys, like Ms. Andrea Marcus, do not charge our indigent clients hourly fees and instead rely on attorneys' fees being awarded in their cases. If their rates are reduced significantly by rural courts, their ability to practice law in our service areas will be compromised to the great detriment of our already severely under-resourced clients.

9.  I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct.

DATED: FEBRUARY 10, 2016

Respectfully submitted,

By: _____

JOSE PADILLA
Executive Director
California Rural Legal Assistance, Inc.

DECLARATION OF JOSE PADILLA - 3

# Improving Civil Justice in Rural California

A Report of
**The California Commission on Access to Justice**

September 2010



A significant percentage of rural residents qualify for legal aid, because rural demographics differ from urban demographics. The average rural household is poorer than the average urban household, and nearly every subgroup of the rural poor comprises a larger percentage of the rural population than their urban counterparts:

- there is a larger percentage of rural elderly and they are poorer, especially elderly women;[113]
- children in rural areas are poorer;[114]
- there is a larger percentage of female-headed households, which are poorer;[115] and
- a lower percentage of rural people with disabilities are employed than their urban counterparts.[116]

Despite the vast need, it is difficult for rural attorneys to provide specialized legal help, especially since rural legal services offices are so understaffed.[117]

### Potential Conflicts of Interest

A significant challenge for rural legal services providers is that they have an increased likelihood of conflicts because legal aid offices cannot serve clients where the adverse party has been or is their client. Providers are precluded from serving both parties, yet the legal aid office is likely the sole legal services provider in the area, leaving no other legal representation for the second party. Private attorneys can be "conflicted out" in two ways: 1) the attorney or someone in their firm has represented someone who is a party in the conflict, or 2) the other party is an attorney's social friend. In small communities there is little anonymity and many interconnected acquaintances, especially in the legal community.

### Few Pro Bono Resources

Urban legal aid work is supplemented by extensive pro bono efforts by private attorneys and other supporters that help to fill the representation gap. Rural legal aid offices have fewer local resources from which to draw. There are no large law firms (which could be a source of pro bono services), fewer law schools, fewer corporate headquarters, and fewer foundations. "Large firms" in the Central Valley, for example, have 20 attorneys, rather than the hundreds of attorneys found in large urban law firms. Some rural areas have no lawyers, or lawyers with a limited range of experience and expertise. Thirty percent of rural attorneys are government lawyers, and they are often precluded from doing pro bono work.[118] Surveys show that rural solo attorneys already do some low fee work and provide free legal services to low and moderate income people.[119]  The few corporate headquarters in rural areas often involve an industry that may be at odds with legal services clients, and the small number of foundations means that fewer local charitable dollars from corporations or foundations are available for legal aid.