# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.M., <br><br> Plaintiff, <br><br> v. <br><br> TEHACHAPI UNIFIED SCHOOL DISTRICT, et al., <br><br> Defendants. | Case No.: 1:17-cv-01431 LJO JLT <br><br> FINDINGS AND RECOMMENDATION TO GRANT THE MINOR'S COMPROMISE <br> (Doc. 44) |
| BRENDA MARKHAM, <br><br> Plaintiff, <br><br> v. <br><br> TEHACHAPI UNIFIED SCHOOL DISTRICT, et al., <br><br> Defendants. | Case No.: 1:15-cv-01835 LJO JLT |
| BRENDA MARKHAM, <br><br> Plaintiff, <br><br> v. <br><br> TEHACHAPI UNIFIED SCHOOL DISTRICT, et al., <br><br> Defendants. | Case No.: 1:18-cv-00303 LJO JLT |

| | |
|---|---|
| 1  TEHACHAPI UNIFIED SCHOOL DISTRICT | Case No.: 1:16-cv-01942 LJO JLT |
| 2          Plaintiff, | |
| 3      v. | |
| 4  K.M., | |
| 5          Defendant. | |
| 6 | |

K.M., through her guardian ad litem/mother seek damages from under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, the Rehabilitation Act and the Unruh Act for being denied a free appropriate public education. In addition to this action, the parties have also been in litigation in other cases including, Markham v. Tehachapi Unified School District, Case No.: 1:15-cv-01835 LJO JLT, Markham v. Tehachapi Unified School District, Case No.: 1:18-cv-00303 LJO JLT and Markham v. Tehachapi Unified School District v. Markham, Case No.: 1:16-cv-01942 LJO JLT.[1] The parties have settled the actions, pending approval of this Court of the minor's compromise. Because the settlement appears to provide the child significant benefit and provides her the services that seem to best serve her needs, the Court **RECOMMENDS** the minor's compromise be **APPROVED**.[2]

I.      **Factual and Procedural History**

At the time this action was filed in October 2017, K. M. was a 9-year-old of average intelligence.[3] (Doc. 2 at 2) However, K.M. has autism[4], which causes her "difficulty with verbal language skills and acquiring socially acceptable means for expressing protest, fear, frustration, anger,

---

[1] Though this Findings and Recommendation will be filed in each of the cases, for ease of drafting, the docket references are only to K.M. v. Tehachapi Unified School District, Case No.: 1;17-cv-01431 LJO JLT, the case in which the original petition for approval of the minor's compromise was filed.

[2] Due to the ongoing school year and because the child's needs seem best served by her being in school rather than in Court, because the motion is unopposed and the amended petition adequately sets forth the information required under Local Rule 202(b), there is good cause to not hold a hearing and to excuse the attendance of the child at the hearing.

[3] She is currently in the 6th grade.

[4] According to Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist., 267 F.3d 877, 882–83 (9th Cir. 2001), "Autism is a developmental disorder of neurobiological origin that 'generally has lifelong effects on how children learn to be social beings, to take care of themselves, and to participate in the community. National Research Council, Educating Children With Autism 9 (Catherine Lord & James P. McGee, eds., National Academy Press 2001). [Footnote] The disorder is present from birth, or very early in development, and affects the child's ability to communicate ideas and feelings, to use her imagination, and to establish relationships with others. Id. No single behavior is characteristic of autism, and no single known cause is responsible for its onset. Id. Perhaps most distressingly, currently there is no cure. Id."

desire for something, sadness, or any other emotion. She has only recently begun speaking, and is still learning to communicate commensurate with her cognitive ability and chronological age." Id. To address these deficits, her pediatrician prescribed Applied Behavior Analysis, the cost of which was covered by the child's health insurance. Id. The student alleged that the defendants denied her these services while at school because the ABA therapist was not an employee or contracted with the school district. Id.

The student alleged that this refusal forced her to choose between receiving the services or attending school. (Doc. 2 at 3) Consequently, she was not able to attend school regularly. Id. at 10. She missed an entire year of school so she could obtain the ABA treatment. Id. The student alleged that by precluding her from receiving the treatment in the school setting, this detracted from the effectiveness of the therapy. Id. The inability to attend school also caused her to fall further behind in her educational pursuits. Id. at 11. In addition, the student asserts that when she was at school she was subject to unsafe conditions and was provided inadequate supervision. (Doc. 44 at 4-5)

In April 2017, the administrative law judge issued a determination after holding a due process hearing.[5] (Doc. 2 at 12-13) The order required the school district to "'hold an [Individualized Educational Plan] meeting for the purpose of openly and honestly discussing and considering the ABA prescription and Mother's request that [Defendant] allow [K.M.'s] ABA insurance funded aide to accompany Student on campus. [Defendant] is ordered to provide training to its administrative and special education personnel regarding parental participation in the IEP process under the IDEA.'" Id. at 13. The resulting IEP permitted the student to have the ABA therapist at school beginning in August 2017 but only if the IEP continues to condone it and the right to these ongoing services at school could be terminated at any subsequent IEP meeting. Id.

Recently, the parties engaged in settlement efforts and resolved the dispute. (Doc. 44-1) The parent/guardian ad litem has already signed the settlement agreement guardian on her own behalf and on behalf of the child. Id. at 6. The guardian ad litem describes the settlement terms, and the value of them, as follows:

---

[5] The ALJ refused to consider the claims brought by the child under the ADA/Rehabilitation Act or the Unruh Act citing a lack of jurisdiction. (Doc. 2 at 12)

3

1. $20,000.00 (as per her parents' invoices) for non-attorney costs incurred from advocating for K.M

2. $45,000.00 in a Blocked Trust for K.M., for future independent-living and educational costs she will have due to the delay in receiving appropriate intervention.

3. Inclusion-Specialist assessment, consultation and support, so that K.M. can be integrated successfully with nondisabled children. The inclusion specialist will be contracted to perform an inclusion assessment of K.M. (1) within 30 days of the execution of the Agreement, while K.M. currently attends the 6th Grade; (2) upon transition from middle school to high school (8th to 9th Grade); and (3) from lower high school to upper high school (10th to 11th Grade). Moreover, Defendant shall contract with Dr. Alcan (or her mutually-suitable replacement) to provide 10 to 20 hours per year of follow-up observation and consultation for fidelity checking and staff training (10 hours will be provided in years where an inclusion assessment is performed; 20 hours in other years). Although expected to go up with inflation, this is currently $200.00 per hour, with each assessment involving observations and assessment totaling 25 hours, this award is worth roughly $37,000.00:

    i. Three Assessments: worth roughly $15,000.00.

    ii. Three years of 10-hours of fidelity-checking and staff training, during years which include an assessment: worth roughly $6,000.00.

    iii. Four years of (up to) 20 hours of fidelity-checking and staff training during the years which do not include an updated inclusion assessment: worth roughly $16,000.00.

4. Licensed Lindamood Bell providers, Orton-Gillingham providers, or STAR Haynes NPA 1:1 instructional services will be provided to K.M. during school hours for an hour each school day (inclusive of Extended School Year ("ESY")), through 12th grade, 200 school days per year. Each hour costs between $90 and $130 dollars per hour, for 7 years and 5.5 months, totaling roughly 1510 hours, for a total cost of between roughly $135,900.00 and $196,300.00.

5. BCBA behavior support and training of staff, at up to 15 hours per month, at $300.00 per hour, for a total of 10.5 months per year, as long as she remains in school - worth roughly: $355,500.00.

6. Ms. Schnee, private speech pathologists, will be contracted with annually to review progress in achieving K.M.'s goals and assess whether services need to be adjusted, via an Administrative Amendment to K.M.'s IEP within 30 days of full execution of this Agreement. This is estimated to be worth between $1500.00 and $3500.00, per year, according to Ms. Schnee's hourly rate of $200.00 per hour, and the remote nature of Defendant's school district and Ms. Schnee's need to observe her in the school setting.

7. Defendant will provide K.M. a laptop that she is allowed to take from class to class but not to home. This is estimated to be worth $500.00;

8. The settlement also succeeded in getting the following be provided to K.M. by Defendant:

    a. Annually, all staff working with K.M. will be trained on how to use the software recommended by K.M.'s 2016 AT assessment, via an Administrative Amendment to K.M.'s IEP within 30 days of full execution of this Agreement. Staff training on how to utilize K.M.'s

4

software is key to its utilization;

b. Changes to K.M.'s permanent daily schedule will be communicated to the ABA staff/parent a minimum of one week prior to the change as possible. Changes, which are not explained to K.M. in advance, cause K.M. anxiety and reduce her ability to be productive at school, given her autism. Historically, the Defendant had repeatedly made changes to K.M.'s programming, without providing her the opportunity to be prepared beforehand.

c. Speech services will be provided upon recommendation from Karen Schnee in her 2018 report. K.M.'s parents have worked throughout this litigation to get speech services provided to K.M. according to her needs as determined by the speech pathologist, as opposed to the Defendant's scheduling preferences. The Defendant was found out of compliance, legally, for continuing to do this, and yet, kept repeating this tactic, while K.M. remains in dire need of language acquisition.

d. All goals submitted from Ms. Schnee will be included in K.M.'s IEP, via an Administrative Amendment to K.M.'s IEP within 30 days of full execution of this Agreement. Again, having appropriate speech goals in K.M.'s IEP is an issue fought over between the parties since the beginning of the litigation, and is key to K.M.'s progress in learning to speak;

e. Lunch Bunch (organized group games and activities open to all children) will be used to create opportunities for social skills training in a group for K.M., whose attendance will be facilitated by her TUSD aide, via an Administrative Amendment to K.M.'s IEP within 30 days of full execution of this Agreement. Again, social interaction with other children is a key skill which K.M.'s parents have fought long and hard to win for her;

f. Speech services that are not provided one-on-one, will be provided in such a way that typically developing peers are involved. (During PE, Lunch Bunch, or other classes), via an Administrative Amendment to K.M.'s IEP within 30 days of full execution of this Agreement. Again, this is key, as the Defendant has historically insisted upon "group speech services," in groups of similarly or even more impaired children – none of whom benefit from each other's impairments in learning how to appropriately communicate;

g. Defendant's Special Education paraprofessional assigned to K.M. will be invited to all IEP meetings and their time to attend the IEP will be paid for by the District. All District and District-contracted independent assessors will similarly be invited to participate in annual and triennial IEP meetings and compensated for their time to include creating all applicable goals. This is very important, as the paraprofessional assigned to K.M. is who will be most knowledgeable regarding her functioning and needs at school, as that person will be working with her 1:1. Historically, Defendant has refused to allow the paraprofessionals to attend K.M.'s IEP meetings, making it very difficult to have current and accurate knowledge of her functioning and needs for the IEP team to rely upon in crafting her IEP.

h. Service logs for all related services will be e-mailed to K.M.'s parents on a weekly basis, via an Administrative Amendment to K.M.'s IEP within 30 days of full execution of this Agreement. Such communication has historically been inconsistent, at best, and often non-existent. This will help K.M.'s parents keep track of K.M.'s program and functioning, so that any problems which arise (there have been times when medical needs or new behaviors have been allowed to worsen, given the lack of and/or delayed communication between home and school) can be dealt with timely and be coordinated to be consistent between home and school

(Doc. 44 at 10-14) The student's attorney estimates that the value to the child in simple monetary terms exceed $650,000. (Doc. 44-2 at 1) However, the value to the child toward remediating her autism and improving her educational opportunities appears to be incalculable. (Doc. 44 at 7-10) The petition for approval of the minor's compromise indicates that the settlement "providing K.M. with the best remediation available for a child with her disabilities, amounting to thousands and thousands of dollars of resources for the very supports and services she needs most." Id. at 8-9.

## II. Settlement Approval Standards

No settlement or compromise of "a claim by or against a minor or incompetent person" is effective unless it is approved by the Court. Local Rule 202(b). The purpose of requiring the Court's approval is to provide an additional level of oversight to ensure that the child's interests are protected. Toward this end, a party seeking approval of the settlement must disclose:

> the age and sex of the minor, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount . . . was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent.

Local Rule 202(b)(2).

The Ninth Circuit determined that Federal Rule of Civil Procedure 17(c) imposes on the Court the responsibility to safeguard the interests of child-litigants. Robidoux v. Rosengren, 638 F.3d 1177, 1181 (9th Cir. 2011). Thus, the Court is obligated to independently investigate the fairness of the settlement even where the parent has recommended it. *Id.*, at 1181; see also Salmeron v. United States, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem").

## III. Discussion and Analysis

The petition for approval of the settlement reached on behalf of the child K.M. sets forth the information required by Local Rule 202(b)(2). K.M. is 12 years old and resides with her parents. (Doc. 44-3 at 1; 44-4 at 12) In addition, as set forth above, the petition describes the events that gave rise to

the damages arose as a consequence of the defendants' failure to allow the student to have her prescribed ABA services at school. (Doc. 44 at 4-7)

### A.     Award to K.M.

As detailed above, the student will receive a combination of money and services to address the deficits caused by her autism and her insufficient formal education. The district will pay settlement funds for the child's future needs within 30 days.  This sum is to be deposited into an interest-bearing blocked trust account at an FDIC insured banking institution for the child's benefit. (Doc. 44 at 10) In addition, she will receive significant services designed to address the deficits caused by her autism and which interfere with her education and development. (Doc. 44-1 at 1-3)

### B.     Proposed Attorney Fees and Costs

K.M. will not be required to contribute to fees and costs.  Rather, the costs are being paid directly to the attorney by the district and the fees will be determined through binding arbitration. (Doc. 44-1 at 1) It appears that the efforts of counsel have yielded significant benefits for the child. Thus, K.M. benefits greatly by the fact that the child will not have to have any of her award be taken up with paying fees or costs.

### C.     Recovery in Similar Actions

As noted above, the Court is obligation to consider the outcome of similar cases to determine whether the sum to settle the children's claims is reasonable.  See Robidoux, 638 F.3d at 1181; Salmeron, 724 F.2d at 1363.  However, due to the unique nature of these cases, comparing them is not practical.  For example, each child suffers differently from the conditions upon which these actions are based.  Likewise, the damage the child suffers due to the disabling condition combined with the denial of a FAPE, varies widely.

Nevertheless, it appears that students succeeding in the district court for denial of a FAPE under the IDEA, often receive additional services, though the services vary on the needs of the child. Woods v. Northport Pub. Sch., 487 F.App'x 968, 978 n. 2 (6th Cir. 2012) [affirming the award of 12 hours of compensatory education to the child with autism for each of the 64 weeks of denied FAPE]; Anchorage Sch. Dist. v. D.S., 688 F.Supp.2d 883, 886, 890 (D. Alaska 2009)[affirming the award to the student with autism of a home-based educational program using intensive behavioral therapy and

reimbursing the parents for costs of a comprehensive evaluation of the child, requiring the school district to pay for the child's private school tuition where the services were being provided and awarding attorney's fees and costs]; Norristown Area Sch. Dist. v. F.C., 636 F.App'x 857, 863-64 (3d Cir. 2016) [affirming award of private school tuition for a student with autism and attorney's fees and costs]; Capistrano Unified Sch. Dist. v. Wartenberg By & Through Wartenberg, 59 F.3d 884, 897 (9th Cir. 1995) [same.] Thus, although Petitioner did not identify any similar actions to support the approval of the minors' compromise, the Court finds the recovery is appropriate considering those received by minors in other actions.

Based upon the information provided in the motion and the supporting documents, and considering the totality of the facts and circumstances of this case—and most particularly, the excellent result achieved—the Court finds the settlement agreement is fair, reasonable, and in the best interests of the child.

**IV.     Findings and Recommendations**

Based upon the foregoing, the Court **RECOMMENDS** that the petition to approve settlement of the minor's claims be **APPROVED IN FULL** and that the parties be **DIRECTED** to file with the Court a stipulation for dismissal of the action with prejudice, and lodge a separate order, no later than 45 days after these findings and recommendations are adopted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///
///
///
///
///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **February 28, 2019**         **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE